## John Clague

### vs.

## Thomas Hodgson.

The same presumptions exist in favor of the regularity and formality of the proceedings before a justice of the peace, in a cause of which he has jurisdiction, as in a court of record.

Therefore, where the justice's docket stated, that "defendant asked for a venire;" "issued venire to L. H. R.;" "venire returned with the following names as jurymen personally summoned," (giving six names; "the following persons appeared and were sworn as a jury to try the cause by agreement of parties," (giving five names,) it is to be presumed that the venire was issued for a jury of twelve, selected as required by law, though six only were returned as personally summoned, and that the jurors took the proper oath, and defendant is estopped by his agreement to deny it, or to question the authority of the jury of five to try the cause. So, the docket entry being, that "the jury retired under the charge of constable L H. R. sworn for that purpose; jury returned into court, and say they find for plaintiff, and assess his damages at eight dollars," it is to be presumed that they were kept together as by law required till they agreed, and that they did agree, and delivered their verdict to the justice in due form of law.

So, making a jury list being taxed for, it is to be presumed that a list was made; and costs being taxed for travel of witnesses, it is to be presumed that the proper proof was made.

Witnesses' fees may be taxed for, though they were not subpœnaed.

At the time the appeal from the justice's judgment was taken, defendant paid the justice's fees, as taxed, in full. Such payment being voluntary, the defendant cannot object to the taxation on appeal.

A complaint which alleges, in substance, that "on or about October 21, 1868, defendant unlawfully took or caused to be taken from plaintiff's possession, and carried away a buck, the plaintiff's property, of

the value of twenty-five dollars; that on or about the 23d day of October aforesaid, plaintiff was entitled to the immediate possession of the buck, and defendant, being then and there in possession of it, unlawfully converted and disposed of it to his own use, thereby depriving plaintiff of the possession and also of the use of it, to plaintiff's damage in the sum of $75," sufficiently states a cause of action in the nature of an action of trespass *de bonis asportatis.*

The evidence held sufficient to maintain the action without proof of a demand. *Cole vs. Maxfield,* 13 *Minn.* 235, followed and applied to certain irrelevant evidence admitted in this case.

One who has been a shepherd abroad, and kept and owned sheep here, and swears that he can tell the age of a sheep by its teeth, till it is four years old, may be asked the age of a sheep, by its teeth, which was under four years old.

An objection that a question is incompetent and irrelevant, does not raise the point that it is too general and leading.

The defendant in this action appeals to this court from a judgment of the district court for Dakota county. The case is sufficiently stated in the opinion of the court.

E. J. HODGSON for Appellant.

BOWE & STREETER for Respondent.

*By the Court*—RIPLEY, CH. J.—Both parties to this suit are farmers and neighbors. In October, 1868, the defendant's wife, supposing a buck of his to be on the plaintiff's premises, sent his servants for it, who took and carried away from plaintiff's to defendant's premises, instead thereof, and by mistake, one belonging to plaintiff. A day or two after, defendant killed a buck, the flesh of which was eaten in his family; hence the present action; the plaintiff alleging, that the sheep taken and that killed were the same, and his, and the defendant denying it. It was brought before a justice, and tried by a jury, who found for plaintiff and assessed his damages at eight dollars.

Clague v. Hodgson.

Judgment was rendered on the verdict.

Defendant appealed to the district court, on questions of law alone. The district court affirmed the judgment, and defendant appeals to this court.

At the trial the defendant offered no evidence whatever to rebut plaintiff's positive proof that the sheep so taken belonged to the plaintiff, but attempted to show that the one killed was his own, not plaintiff's. In this we think he failed, and indeed, one of his witnesses stated, on cross-examination, a fact which is conclusive, that the animal killed was, at all events, not that one of his, (if he had more than one which does not appear,) that he wished the jury to believe it was.

Upon the merits, then, the verdict is right, and though the jury may have set a less value upon the sheep than was open to them to do upon the evidence, if this moderation resulted, as is suggested, from a desire of quieting ill feelings between neighbors, it is certainly unfortunate that it has not had the effect intended.

Besides objecting to the sufficiency of the complaint and moving for a nonsuit, the defendant took, at the trial, fifteen exceptions to rulings of the justice upon the admissibility of evidence. He raises here, also, several objections to the formality and regularity of the proceedings in justice's court prior and subsequent to the trial, which he ends with the remark, that "nothing is presumed in favor of the proceedings in justice's court." This is a misconception of the rule, that such court, being one of special and limited jurisdiction, the facts giving it must appear upon the record, no presumptions are made in favor of it.

As to the formality and regularity of the proceedings in a cause of which a justice has jurisdiction, the same presumptions exist in favor of their formality and regularity,

as in courts of record. All the objections above referred to are based on the misconception above mentioned, and are untenable in the light of the correct rule aforesaid, applicable to such proceedings, as will appear upon stating them.

The return sets forth that "defendant asked for a venire; issued venire to L. H. Raymond; venire returned with the following names as jurymen personally summoned, (giving six names.) The following persons appeared and were sworn as a jury to try the cause by the agreement of the parties," viz: (giving five names.)

Whereupon it is objected that it does not appear that the jury was selected, empanneled or summoned as provided by law, or that they had any authority to render a verdict, or that a list of names was made as required by law, or that the parties consented in any manner that a jury of six might be made, or that they took the oath required by law; all which defendant is estopped by his consent above stated to deny. But the presumption also is that the venire was issued for jurors selected as required by law, and for twelve, no record agreement for a jury of six appearing.

Moreover, one item of the constable's costs taxed, is for making a list. Nor does it at all follow, as defendant would appear to think, that because the officer returned *six* jurymen as personally summoned, it was therefore a venire for six only. The wording rather supports the presumption to the contrary arising from the fact that the law requires a venire for twelve, in the absence of the written agreement of the parties above referred to.

So, it appearing that the jury were sworn to try the cause, it is necessarily to be presumed that they took the proper oath.

And a jury sworn to try the cause, by the defendant's agreement, were at all events authorized to do so so far as he was concerned.

Clague v. Hodgson.

The return states that the case being closed, "the jury retired under the charge of constable L. H. Raymond, sworn for that purpose; jury returned into court and say they find for the plaintiff and assess his damages at eight dollars." The defendant's objections, that it does not appear that they were kept together, as by law required, till they agreed, or that they ever agreed or delivered any verdict to the justice, or when they returned into court to say, "they find for the plaintiff," or that any legal verdict was rendered in the case, are too obviously based upon the misconception before alluded to, to require remark.

Certain items of the costs taxed in the justice's court are also objected to.

Those included in the "justice's costs," need not be considered.

The record shows, that at the time the appeal was taken, the defendant paid said justice's costs in full, as well as his fee for the return. Such payment was wholly voluntary, for the law required payment of the fee only, and not that unless demanded by the justice. *Laws of* 1868, *ch.* 93. He cannot, therefore, object to the taxation.

The "constable's costs" include "jury list, $0.15;" "summoning jury, $1.00;" "attending jury, $0.50;" "one day's attendance on court, $1.00."

It is objected to the first, that it does not appear that any list was made; in other words, that as the justice has not set out in so many words that the officer made a list, it is to be taken that he did not make one, though it is taxed for. On the contrary, the presumption is that the justice would not have taxed for a list, unless it had been made; that he kept, not broke, the law.

It is objected to the others, that it does not appear that

the constable had any authority to summon a jury, or that he attended the jury or the court.

It is difficult to suppose that the defendant is serious, in view of the fact, that the record shows the issuance of the venire to the officer, and that he did attend the court and take charge of the jury.

Costs are taxed for the travel of witnesses. It is. objected that it does not appear that such travel was proved by the oath of some person qualified to testify in the cause. *Gen. Stat. ch.* 70, *sec.* 18. As the travel is taxed for, the presumption is that the proper proof was made.

Finally, it is objected that no fees should have been taxed for plaintiff's witnesses, because it does not appear that they were subpœnaed. This is not necessary to entitle them to their fees. *Gen. Stat. ch.* 70, *secs.* 7, 8.

The complaint is objected to on the ground that it does not state facts sufficient to constitute a cause of action.

The defendant conceives it to be a complaint in trover, for the conversion of a buck, and that it contains two counts, one for general, and one for special damages. If so, it would be a curiosity under any system of pleading. Such, however, is not the case. It undertakes to state a cause of action in the nature of trespass *de bonis asportatis*, and however unskillfully, does so sufficiently. It alleges, in substance, that on or about October 21, 1868, defendant unlawfully took " or caused to be taken," from plaintiff's possession and carried away a buck, the plaintiff's property, of the value of twenty-five dollars; that on or about the 23d day of said October, plaintiff was entitled to the immediate possession of the buck, and defendant, being then and there in possession of it, unlawfully converted and disposed of it to his own use, thereby depriving plaintiff of the possession, and also of the use of it, to the

plaintiff's damage, in the sum of seventy-five dollars, and demands judgment for the said sum of seventy-five dollars.

As the buck was killed one or two days after it was taken, the pleader seems to have thought it necessary to allege the conversion in the order of time, in which, as he considered it, it occurred. But "*on or about October* 21," and "*on or about October* 23," do not amount to a specification of different days, or of any particular day in October.

The allegations that the taking was unlawful, and that plaintiff was entitled to the possession, are unnecessary, being included in the fact that the animal was taken from the possession of the owner. Nor is "took or caused to be taken," bad as a statement in the alternative.

Whether the defendant took the sheep himself, or caused it to be taken by others, trespass would lie against him for the taking; these statements, amounting, therefore, to the same thing, the second is surplusage.

That plaintiff lost the possession and use by the conversion of the animal, as it was a necessary consequence of it, needed not to be stated.

Pruned of these immaterial allegations, the complaint is substantially the common count in trespass *de bonis asportatis*, viz: that in October, 1868, the defendant took from the possession of plaintiff, a sheep, belonging to him, of the value of twenty-five dollars, and carried away and converted and disposed of the same to his own use, to plaintiff's damage, seventy-five dollars.

Or, if the conversion set out *must* be taken to have been on a day subsequent to the taking, the allegation in relation to it can be rejected as surplusage, and leave a good cause of action, for the taking is in itself a conversion. 14 *Pick.* 360. The pleader evidently thought, that in such an action as this, the measure of damages was, as a general rule, not only the

value of the animal, but also what his use would have been worth to him from the taking to the trial, and has stated his claim accordingly.   The latter allegation, however, is wholly irrelevant.

As to the motion for nonsuit, it is said that there was no evidence that plaintiff owned the sheep, or had any right to the possession, or that defendant was in any way connected with the taking; that the evidence showed that defendant received the sheep innocently, and was, therefore, entitled to a demand before suit.   There seems to be no foundation for these assertions.

Plaintiff testified that a buck sheep, belonging to him, was in his pasture on the 21st October; competent evidence to prove both ownership and actual possession.

His nephew swore that his uncle kept it in a field in front of his house; that it was fettered, and that on the said day he saw the sheep in defendant's wagon, in the possession of two men living with and working for defendant.   One of these men testified that, at the suggestion of plaintiff's wife, who "did most of the business, defendant being incompetent," he went to plaintiff's with defendant's team and took a buck sheep from his pasture; that it had a fetter on it, and was the only sheep in the field; that he took it to defendant's and put it in his stock yard.   Another witness testified that some time in that fall, at defendant's request, he took from defendant's stock yard and killed for him a buck sheep which had a fetter on.

It also appears from the testimony on behalf of the plaintiff, that the sheep was killed about October 23d, and that about two weeks after it was killed, defendant told another witness that he had been accused of killing plaintiff's sheep, and wished him to examine the hide and see if there was any merino in it (the sire of plaintiff's buck was one-fourth

Clague v. Hodgson.

merino); that he told defendant on such examination that it was one-third merino. This was sufficient *prima facie* evidence that the buck killed was plaintiff's, and that defendant knew it.

A demand under the circumstances would be superfluous. Moreover, the sending the hired men, must be taken to be done by his authority, and though the taking was by their mistake, yet defendant must be presumed to have known that the sheep was not his, and keeping it in his stock yard was a conversion, for which an action would have lain, without a demand, before the killing.

This brings us to the objections to evidence. The first is not urged. The second and fifth are bad, the ground of objection not having been stated.

Plaintiff was asked, "for what purpose did you keep the sheep?" which was objected to as incompetent and irrelevant. The objection was overruled, and plaintiff testified, that he kept him for breeding. This was of course irrelevant; and the same remark applies to the plaintiff's evidence that the damage to him from not having had the use of the sheep was forty dollars.

The value of the animal had been proved *aliunde*, and nothing is alleged or proved to show that the value and interest was not the proper measure of damages.

The defendant contends, that the admission of such irrelevant evidence was calculated seriously to mislead the jury, and that it is impossible to say that the verdict was not enhanced by it, though plaintiff testified that the sheep was worth twenty dollars, and defendant offered no evidence that it was worth any less.

A statement, that it was impossible to say that the verdict *was* enhanced by such irrelevant testimony, would seem to follow more naturally on such a state of facts. This being

so, the remarks of this court in *Cole vs. Maxfield*, 13 *Minn.* 235, apply, viz: that " the object of a new trial is to afford a fair trial; and if the court can see that there is no reasonable ground to apprehend that injustice was done by the reception of immaterial testimony, or to apprehend that the jury were misled. by it to the substantial prejudice of the objecting party, a new trial should not be granted." They apply with peculiar force to the present case, which involves no principle whatever, and a sum too trifling to warrant, o itself, an appeal from the court below.

Plaintiff's nephew, who went for the sheep by his uncle's order, was asked what Joseph Hodgson and John Hutchinson said when he asked them for the fetter. (The sheep had been killed before he got to defendant's house.)

The objection that this was irrelevant and immaterial was overruled, and exception taken. The defendant insists that the question " is clearly inadmissible and pernicious in its effects on the jury;" but the witness had already stated, without objection, that " I asked Joseph and Mrs. H. for the fetter and sheep's head. They said they could not find it. John Hutchinson told me where it was;" and we cannot see that any farther statement was made responsive to this question.

The statement of the witness that Joseph said they got the sheep in the pasture before John Clague's house, refers to a statement made by him at a different time.

Another witness swore that shortly after the killing the family were eating mutton. Defendant's objection to the evidence as irrelevant, was proper, but overruling it, is no ground for a new trial, for the reason stated above. It could not prejudice the defendant, with the jury. If defendant had killed plaintiff's sheep, plaintiff's cause of action was perfect. It was merely superfluous to prove what he

did with the flesh. That but one sheep was killed is not disputed. The only question was *whose* it was, on which this evidence could have had no bearing whatever. It was purely immaterial. Moreover, as we have already seen, plaintiff might have recovered without proving the killing.

Plaintiff had proved that his sheep was about one year and ten months old. At the time the witness before referred to examined the hide of the shee that had been killed, some one of the family said, in the presence of Mrs. Hodgson, that there was the head of the sheep that had been killed, and the witness then examined the head. He was asked, at the trial what he should guess was the age of the sheep by the teeth, which was objected to, and the objection over-ruled. He replied that he should think it was about two years old by the teeth.

It is objected: 1st. That he showed no competency to judge of the age by the teeth.

2d. That there is no evidence that the head he examined was that of the sheep in question. The witness, however, had stated that he had some acquaintance with sheep and wool, and defendant upon cross-examination brought out that he had been a shepherd before coming to America, and had kept sheep here, and that he could tell a sheep's age by its teeth till it was four years old. This we think sufficient, and indeed, considering that defendant had called on him as an expert, respecting the hide, it hardly lies in his mouth to say that he had not the ordinary knowledge of a shepherd.

As to the other ground of objection, this was about two weeks after the killing. If defendant had killed other sheep than the one in question in the meantime, that was for him to show. Unless he was in the business of butchering sheep, there would be no such presumption, and there is no

pretense that he had killed any other, to say nothing of the statement in the presence of defendant's agent and not controverted by her, that this was the head.

Another witness was asked if he had any conversation with defendant in regard to obtaining a buck for plaintiff, which was objected to as incompetent and irrelevant. The question was too vague and general, but not on that account disadvantageous to defendant. If he had never had any such conversation, it could not injure him.

The answer was, that defendant asked him, if he knew any one who had a sheep to sell—which was so clearly not such a conversation, that it necessarily conveyed the idea, that defendant had not said anything to him about getting a buck for plaintiff, and could not have injured the defendant. The plaintiff then asked, " What was said in the presence of Mr. Hodgson and wife by some of the family in regard to getting a sheep for Clague ?" This was objected to on the same ground as the other, but as in that case, the answer might, or not be incompetent or irrelevant.

The question was too general, and objectionable as leading, but it was not objected to on that ground

The answer was, " Some one said something about getting a sheep for Mr. Clague." This was irrelevant and immaterial, but it does not seem probable that it could have had any effect on the mind of the jury. It must, we think, have been plain to them that the witness knew nothing to the point. At all events there is no ground to believe that they were misled by it, to the substantial prejudice of the defendant.

Judgment affirmed.