STATE OF MINNESOTA *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

February 9, 1887.

**Constitution—Eminent Domain—Just Compensation.**—As section 15, chapter 188, Laws 1885, makes no provision for "just compensation," its requirement that railroad companies shall permit others, on application, to construct, maintain, and operate elevators on the lands of such companies, is unconstitutional and void.

Appeal by defendant from an order of the district court for Steele county, *Buckham*, J., presiding, overruling its demurrer to the complaint.

*W. H. Norris* and *Chas. E. Flandrau*, for appellant.

*William J. Hahn*, Attorney General, and *W. S. Pattee*, for the State.

GILFILLAN, C. J.[1]  Section 15, chapter 188, Laws 1885, is as follows: "Every railroad company or corporation organized under the

---

[1] Mitchell, J., not having heard the argument, took no part in the decision of this case.

laws of this state, or doing business therein, shall upon application permit any person, company, or corporation, for an annual rental of one dollar, to construct, maintain, and operate any elevator or warehouse at any of its regular way-stations, to be used for the purpose of receiving, storing, and handling grain, and such permission shall be granted without regard to the capacity of such elevator or warehouse, and without discrimination as to persons, and in the order of application; and such railroad company shall also provide reasonable side-track facilities and running connections between its main track and elevators and warehouses upon or contiguous to its right of way at such stations, and every such railroad corporation shall permit connections to be made and maintained in a reasonable manner with its side tracks to and from any warehouse or elevator, without reference to its size or capacity, where grain is or may be stored: *provided,* that this shall not be construed so as to require any railroad company to construct or furnish any side track off from its own land: *provided, further, however,* that such elevators and warehouses shall not be constructed within one hundred (100) feet of any existing structure, and shall be at safe fire distance from the station buildings, and so as not to essentially conflict with the safe and convenient operation of the road: *and provided, further,* that, where stations are ten (10) miles or more apart, the railroad company, when required to do so by the railroad and warehouse commissioners, shall construct and maintain a side track for the use of shippers between such stations." Section 27 provides a penalty not less than $100, nor more than $5,000, to be imposed on any railroad company offending against any of the provisions of this act.

The action is to recover this penalty for a refusal by defendant to permit one Barry, on his application, to construct, maintain, and operate on its land a warehouse at Blooming Prairie, a regular way-station on one of its lines of road. The court below overruled a demurrer to the complaint, and the defendant appealed.

On the argument here it was assumed on both sides that the intent of section 15 is to require of a railroad company to permit any person or corporation applying for such permission to construct, maintain, and operate on the lands of the railroad company an ele-

vator or warehouse for receiving, storing, and handling grain; and for the purposes of this case we assume that to be the proper construction of the section.

Taking that to be the intent of the section, the question presented to us, to wit, the constitutionality of that requirement, is very simple. The lands acquired by a railroad company for the purposes of its enterprise are, so far as the right of property is concerned, private property. If purchased, the company pays for them; if taken in the exercise of the right of *eminent domain*, it pays the compensation to the owner. They are purchased or taken and held for a public purpose,—a public use. Otherwise they could not be taken under the right of *eminent domain*. They are charged with a public duty, which the company, in consideration of the rights and powers conferred on it by the state, assumes to perform, and which the state can compel it to perform. But such public use is specific, not general; and, when required for any other public use, the land must be taken for the purpose in the same manner as the lands of any private owner are taken; *i. e.*, through the right of eminent domain. The ownership being private, there being a private interest in them, they cannot in any manner, nor on any pretext, be taken for a private use without the consent of the owner. Nor can they be taken for a public use without making just compensation. Such compensation cannot be fixed by the state; but, to determine it, the state must provide an impartial tribunal before which both parties may meet and discuss their claims on equal terms. *Langford* v. *County of Ramsey*, 16 Minn. 333, (375.)

These are elementary propositions, not disputed on the part of the state. On its part it is conceded that, if the section authorizes a "taking" within the constitutional meaning of the term, the section cannot be sustained. And this is undeniable, for the act makes no provision for ascertaining or making "just compensation" as required by the constitution.

That what the section contemplates is a taking, if anything can be, hardly admits of argument. When it puts A., without the consent of the company, into possession of a portion of its land, with right of exclusive control, use, and occupation, ousting the company·

therefrom, depriving it of all control and use of it, the land is pretty effectually taken from the company, and conferred upon A. It is of no moment that whatever title the company originally acquired is nominally left in it. Commonly, when private land is taken for public use, the nominal title is left in the owner, the right to use it for the particular public purpose only being taken. But that does not justify the taking without just compensation.

It is, however, contended that the section aims merely at regulating the public use for which the land was originally taken. By that taking the company acquired and paid for the exclusive right to possess and employ the land in that public use. Such right cannot be taken from it except through exercise of the right of eminent domain or through forfeiture. The section does not assume to control or direct the company in its use of the land, but to exclude it from such use, and to confer the right to employ it in a similar use upon another. It must be apparent that the amount of land to be taken does not affect the principle. If the state can take any of the lands, it can take all; if it can put another person or corporation into possession of so much of the company's land as is necessary to construct and maintain an elevator or warehouse, it can put another corporation into possession of so much of its land as may be necessary to construct and maintain another railroad. Indeed, if it can, under pretext of regulating the use, oust the company from any part of its property, however unimportant, no reason can be given why it may not, as a regulation, oust it from its right of way, yards, depot-grounds, tracks, and stations, and put other parties in possession of them, for it holds and employs all these for public use.

So far as the section requires railroad companies to let other persons into possession of any portion of their land without the compensation required by the constitution, it is invalid.

Order reversed.