CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. CITY OF MINNEAPOLIS.[1]

Nos. 24,546, 25,658.

July 17, 1925.

**Under charter of Minneapolis widening and grading street are essentially different improvements.**

1. In a proceeding, under chapter XX of the city charter of the city of Minneapolis, to widen, open and grade a public street, the widening and the grading are essentially different improvements, though included in the same proceeding.

**Offsetting damages for land condemned for widening street against benefits for grading it.**

2. Damages, for the taking of land with which to widen a public street, cannot be offset by benefits arising out of the grading of the street. [Overruled after reargument, see pages 232, 233, 235.]

**Difference between value of land condemned and amount of benefits must be paid in cash.**

3. Where benefits, in such proceedings, flowing from widening the street, are not equal to the value of the land taken, the difference must, under the Constitution, be paid in cash or secured.

**Commissioners should fix damages and special benefits separately.**

4. Where the award is silent as to the amount allowed for the land taken to widen a street, and as to the amount of benefits to the remaining part of the tract, arising from its abutting upon a

[1]Reported in 204 N. W. 934, 205 N. W. 640.

wider thoroughfare, the award should have been remanded to the commission with instructions to supply such amounts.

## AFTER REARGUMENT.

### November 13, 1925.

**Under Minneapolis charter damages for land taken for widening street may be offset against benefits to rest of tract.**

5. In a proceeding to widen and grade a street, under the charter of the city of Minneapolis which embodies chapter 185, Laws of 1911, as amended by chapter 345, Laws of 1913, it is proper and legal to offset damages for land appropriated against the special benefits to the land not taken of the same tract.

**Commissioners should fix damages and special benefits separately.**

6. The commissioners appointed to fix the damages and special benefits should determine the same separately.

1. See Eminent Domain, 20 C. J. p. 821, § 257.
2. See Eminent Domain, 20 C. J. p. 821, § 257.
3. See Eminent Domain, 20 C. J. p. 646, § 125.
4. See Eminent Domain, 20 C. J. p. 1052, § 434.
5. See Eminent Domain, 20 C. J. p. 817, § 254.
6. See Eminent Domain, 20 C. J. p. 1038, § 422.

---

5. See notes in 9 L. R. A. (N. S.) 781; L. R. A. 1918A, 884; 10 R. C. L. pp. 158-160; 2 R. C. L. Supp. 983.

Upon relation of Chicago, Rock Island & Pacific Railway Company the supreme court granted its writ of certiorari directed to the district court for Hennepin county, to review an order of November 5, 1924, Kolliner, J., granting respondent's motion for confirmation of the report of commissioners in the matter of acquiring lands for laying out, widening and opening Twenty-eighth street, Minneapolis, and denying relator's motion to remand their report to the commissioners. Reversed and remanded.

*O'Brien, Horn & Stringer,* for relator.

*Neil M. Cronin* and *R. S. Wiggin,* for respondent.

QUINN, J.

Appellant owns a strip of land, in the city of Minneapolis, which is 1,661 feet long, east and west, and approximately 500 feet wide, lying immediately between the right of way of the Chicago, Milwaukee & St. Paul Railway Company, on the north, and Twenty-eighth street on the south. The street is 80 feet wide its entire length, except where it abuts upon the tract mentioned, where it is but 40 feet in width. The city determined to widen, open and grade the street so that it would be 80 feet wide its entire length, and suitable for use. To that end, proceedings were commenced in 1923, under the provisions of chapter 20 of the city charter (G. S. 1923, §§ 1552-1556, L. 1911, c. 185, as amended), to acquire an easement in a strip of ground, 40 feet wide, along the south side of appellant's land abutting upon the street. The council appointed commissioners, a plat was filed, cost of improvement estimated and a report filed.

The plan, as indicated upon the map filed and adopted by the council, shows that no land was to be taken except the strip as above indicated. The report of the commissioners, appointed by the council, estimated the total cost of the improvement at $17,497.25 and recommended an assessment of $2.875 per front foot against all property abutting the street. The assessments for benefits and damages were made accordingly. A total net assessment of $4,815.52 for benefits to the remaining portion of appellant's land was made. The appellant objected to the confirmation of the award, which was filed and presented to the council, and by it overruled, which, in effect, affirmed the award. An appeal was taken by the railway company to the district court, where, on June 26, 1924, three commissioners were appointed by the judge to meet, view the premises, hear all proofs offered, de novo, and render their report and award. On July 15 the commission filed its award, assessing appellant's remaining land in the sum of $2,024 for net benefits, and stating therein as follows:

"We do hereby report to the court that after considering said tract and the damages for the taking of a portion of said tract in

said proceeding, and considering and estimating the benefits and damages to the remainder of said tract not taken, that we hereby find and determine that the above named appellant and the following described land, to-wit: * * * is by the establishment of said proceeding, benefited in the sum of $2,024.00, and we hereby determine and assess the said sum as the benefits to said appellant and said tract in excess of the damages by reason of the taking of a portion of said tract and damages to the remainder of said tract."

Respondent moved the court for an order confirming the award and allowing compensation for the services of the commissioners. Appellant made a counter motion, to be heard at the same time, asking for an order remanding the award, with instructions to the commission to render a new report, stating specifically the amount which the remaining lands will be benefited by abutting upon a wider thoroughfare, the amount which the appellant will be damaged by the taking of its land, and the amount which the remaining lands will be benefited by the grading of the street, exclusive of benefits arising out of frontage upon a wider street; also the net difference between the two last amounts, and, if the foregoing be denied, then that the whole matter be remanded for specific findings as to the amount which the remaining lands will be benefited by the entire improvement, and the damages to appellant by reason of the taking of its land, and the net difference in the two amounts. The motions were submitted together, each upon the award and an affidavit of the attorney presenting the same. The motion, made on behalf of the city, was granted; the other denied in toto. From such order, the railway company appealed. It also procured a writ of certiorari to have the record reviewed. That the order, confirming the award is appealable is not questioned by respondent, and we think it is an appealable order.

The decisive question presented is whether the benefits to appellant's remaining lands, arising from both improvements, may be offset against the value of the land taken, without a specific finding and statement as to the value of the land taken and the benefits which the opening and grading of the street will be to the remaining

lands of the appellant; also whether benefits, arising from the opening and grading of the street, may be offset against the value of the land taken.

We think the appellant should have been apprised of the amount which it was to receive for its land at the time it was to be seized and appropriated. We know of no reason why, in a proceeding to acquire private property for public use, the owner should not be informed as to the value placed upon the property to be taken and the manner in which the same is to be paid for. The decision, in the case of McKusick v. City of Stillwater, 44 Minn. 372, 46 N. W. 769, applies. The law there under consideration was the same as that under which the instant proceeding was inaugurated. The improvement was the same—the widening, opening and grading of a public street abutting upon a tract of land, a part of which is to be taken. It was there held that the widening of the street and the grading of the same are essentially separate improvements, though they be incorporated in a single proceeding, and that the damages for the taking of the land with which to widen cannot be offset by the benefits to the remaining land, arising from the grading of the street. It was there held that damages from the taking of the land can be offset only by benefits arising from the taking, for instance, from the widening of the street. In the instant case, the difference between the benefits to the remaining land, derived from the widening, and those flowing from the grading of the street, seem to have been lost sight of. The difference is essential when it comes to the question of offsets.

It requires no argument to demonstrate that a proceeding to condemn and take private property, for public use, is essentially different than a proceeding for the grading of a public street. If the widening of a street is a benefit to an abutting tract of land, a part of which has been taken for that purpose, then such benefit may be properly offset against damages for the taking of a part of such tract, because it comes directly from the same improvement, i. e., the widening of the street. For the same reason, damages to abutting lands, caused by a heavy grade or a deep cut in front of such

land, might be offset against an assessment of benefits thereto for the grading and improvement of the street, because they arise out of the same improvement. But, where the benefits, in such a case, flowing from the widening of the street, are not equal in amount to the value of the land taken, the difference must, under the Constitution, be paid in cash or secured.

Under this view of the situation, there must be a new award and a new trial. Further discussion of the matters mentioned in the briefs becomes unnecessary.

Reversed and remanded.

STONE, J., took no part.

### AFTER REARGUMENT.

On November 13, 1925, the following opinion was filed:

PER CURIAM.

A reargument was ordered because of doubts arising as to the correctness of the decision holding that the damages awarded for the taking of a strip of ground for a street could not be offset or paid by the special benefits the remaining tract received from the improvement, insofar as the same included opening and grading.

McKusick v. City of Stillwater was held applicable and controlling. It is true, in the syllabus and opinion of that case, the charter provision there in question, which permitted an offset of benefits for grading against damages for taking plaintiff's property for the slopes needed for the grading, was said to be unconstitutional. The decision, without citing any authorities, declared that: "Nothing can be better settled." The announcement of that doctrine was not necessary for the decision, for the judgment granting plaintiff an injunction was reversed upon the sole ground that she was not in position to successfully question the validity of the condemnation and assessment had under a charter which permitted the city in one proceeding to widen and grade a street and offset

special benefits accruing to that part of the lot not taken against the damages awarded for the part taken. The decision, therefore, really being obiter on the question now before us, we do not consider binding as a precedent, being convinced that it is unsound, and leads to unjust and impractical results.

Section 13, article 1, of the Constitution forbids the taking of private property for public use without just compensation first paid or secured. It does not demand the compensation be made in cash. As early as in W. & St. P. R. Co. v. Denman, 10 Minn. 208 (267), this was held. The question, however, related more to compensation for injury or damage to the remainder of the tract of which a part was taken, but the right of set-off for benefits was used without objection without being confined to special damages. Although the then Chief Justice concurred in that opinion, he vigorously dissented when the question again came up in W. & St. P. R. Co. v. Waldron, 11 Minn. 392 (515), 88 Am. Dec. 100, and it was directly held that special damages could be offset against the damages for the taking, and that such offset was equivalent to payment pro tanto. The principle, therefore, was adopted upon mature consideration, and never since has it been questioned. In re M. Ry. & Tr. Co. v. Slingerland, 101 Minn. 488, 112 N. W. 1033, 11 L. R. A. (N. S.) 277, 118 Am. St. 647.

There can be no distinction, constitutional or otherwise, between special benefits to property from the widening of a contiguous street and from the grading or otherwise improving the same. Nor can there be any constitutional objection to a municipality requiring the owner of property specially benefited by an improvement to pay the whole amount at once. Were that done in a proceeding of this sort, the propriety of offsetting the damages against the special benefits, or vice versa, would be palpable. The landowner should not complain if, where the benefits exceed the damages, he is given time on the balance.

The proceeding before us was instituted under the charter which adopted and incorporated chapter 185, p. 229, Laws of 1911, as amended by chapter 345, p. 488, Laws of 1913, the so-called Elwell

Act. Section 6 of chapter 185, amended by the later act, reads in part: "Any existing street or parkway may be improved and the expense thereof assessed and raised in the manner provided by this chapter, including any or all of the following improvements, to-wit: widening, grading, pavement, sidewalks, curb and gutter, sewers and water mains." The street opposite appellant's land was 40 feet wide. The improvement herein consists of taking a strip 40 feet off from appellant's tract so as to make the street of the uniform width of 80 feet and opening and grading the same. There can be no question of the right of the city to assess the remainder of appellant's tract for the special benefits received from both the widening and the grading. If those benefits exceed the damages, there seems no good reason to say that the latter may not be paid at once by offsetting against the benefits, the balance only to be assessed.

It is said the damages belong to the owner personally, the special benefits may only be a charge upon the land. However, the proceeding is in rem and the right to receive the damages for the appropriation proceeds from the ownership of the res, and only the owner is interested in paying the assessments for special benefits fixed against the part not taken. Nor would there be anything unconstitutional, so far as we can see, in assessing special benefits against the owner personally. The offsetting of the one against the other, both being lawful claims, the one in favor of the city and the other in favor of the owner, does not in any manner deprive the owner of his rights.

In a drainage case, Little Tarkio Drainage District, No. 1 v. Richardson, 237 Mo. 49, 85, 139 S. W. 576, the court aptly says: "The landowner whose lands are taken or damaged for the use of the improvement is not, under this statute, paying his assessment in advance, either in law or fact, but under the requirements thereof, and in pursuance to the mandate of the Constitution, he receives just compensation for the land taken and damaged thereby, by the commissioners deducting the value thereof from the total benefits assessed against his other lands and the remaining benefits

assessed, if any, he must pay, just as all other landowners in the district must pay their assessments." Under section 5 of chapter 185 as amended by section 4 of chapter 345, L. 1913, the owner has the option of paying the whole assessment at any time or in instalments over a period of years.

It may be claimed that, after the offset is made, the grading or opening may be delayed indefinitely and, therefore, it is unjust to offset. The assessment for the special benefits is concurrent with the award of damages in the same proceeding and, unless abandoned by the city within the time fixed by the charter, the courts are open not only to recover the damages but, no doubt, also to compel the construction of the improvement or cancel the assessment if the improvement is not made within a reasonable time. When a county or city is charged with the duty of paying for property appropriated for public use by assessing benefited property or by taxation, compensation is secured within the constitutional provision referred to, State v. Messenger, 27 Minn. 119, 6 N. W. 457; State ex rel. v. Otis, 53 Minn. 318, 55 N. W. 143; Johnson v. Clontarf, 98 Minn. 281, 108 N. W. 521; State ex rel. v. District Court, 128 Minn. 432, 151 N. W. 144. Section 10 of the act as amended by section 5 of chapter 345, L. 1913, makes it obligatory upon the city by assessments or bonds to provide the necessary funds not only to pay damages but to make the improvement.

Appellant cites Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L. R. A. (N. S.) 741, and Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738, as to the right to recover consequential damages, where an improvement can be made without taking any of the property injured, and hence the owner is not a necessary party thereto, and may resort directly to the courts for redress. Those cases are not in point here.

The contention of the city that the validity of the drainage law and the Elwell Highway Law (chapter 254, p. 352, L. 1911), are at stake, is unfounded. For the drainage law as amended by section 5, chapter 384, p. 540, L. 1911, requires the damages to be paid at once. Cunningham v. County of Big Stone, 122 Minn. 392,

142 N. W. 802. Hence there can be no set-off. But section 2, chapter 185, p. 229, L. 1911, the provision here controlling, authorizes such set-off.

To the extent indicated the former opinion is altered. We adhere to the rule therein expressed that the commissioners should separately determine and state the amount of damages and the total amount of special benefits to each tract of land involved. The offset may then be made understandingly.

The order confirming the award is reversed, and the proceeding remanded for further action in harmony with this opinion.

STONE, J., took no part.