Frank L. ARIO, et al., Respondents,

v.

METROPOLITAN AIRPORTS
COMMISSION, Petitioner.

No. C1-83-1320.

Supreme Court of Minnesota.

May 17, 1985.

Rehearing Denied July 12, 1985.

510

Michael Berens, Madge S. Thorsen, Lucinda E. Jesson, Minneapolis, for petitioner; Thomas W. Anderson, Minneapolis, of counsel.

Richard J. Gunn, Bradley J. Gunn, Minneapolis, for respondents.

SIMONETT, Justice.

Presented here is the propriety of an order of the Hennepin County District Court certifying approximately 2,000 residential property owners living near Minneapolis-St. Paul International Airport as a class for the bringing of an inverse condemnation action to take "avigational easements" on their properties. We reverse the order for a class action.

In 1970, plaintiffs and others commenced a class action seeking a remedy for airport noise affecting their properties. The action reached us in *Alevizos v. Metropolitan Airports Comm'n,* 298 Minn. 471, 216 N.W.2d 651 (1974) (*Alevizos I*), where we held that a property owner had a remedy in inverse condemnation for the taking of an avigational easement. We held that for a taking the property owner must show: (1) that the airport noise is a direct and substantial invasion of property rights of such proportion that the owner is deprived of the practical enjoyment of the property, and (2) that the invasion results in a definite and measurable diminution in the market value of the property. We also held, however, that the trial court had properly denied class action status. We said a class action was unwarranted because of the

"multitude of individual issues and an absence of common issues." *Id.* at 498, 216 N.W.2d at 668.

The case was remanded to district court, where a mandamus trial was held on the taking of an easement on the parcel owned by plaintiffs Frank and Georgette Ario. After an extensive trial, the district court found that airport noise did constitute a "substantial invasion" of the Ario property interests but dismissed the action for failure to establish a definite and measurable diminution in market value attributable to the airport noise. On appeal, this court affirmed the trial court's findings; but, finding that the Arios had been deprived of a jury trial because they were misled by language in our earlier opinion, we reversed and remanded once again for a new trial. *Alevizos v. Metropolitan Airports Comm'n,* 317 N.W.2d 352 (Minn.1982) (*Alevizos II*).

On this second remand, instead of proceeding immediately with retrial of the Ario parcel, plaintiffs, in June 1983, renewed their request for class certification. This time, a class action was ordered by the trial court but, deeming the question important and doubtful, the trial court has certified the question to us.

### I.

The first issue is whether this court's denial of a class action in *Alevizos I* is "the law of the case" and precludes the trial court from now allowing a class action in this proceeding. The Airports Commission so argues, but we are not persuaded.

■ Ordinarily, issues considered and adjudicated on a first appeal become the law of the case and will not be reconsidered on a second appeal of the same case. *Lange v. Nelson-Ryan Flight Service, Inc.,* 263 Minn. 152, 116 N.W.2d 266 (1962). *See also Cayse v. Foley Brothers, Inc.,* 260

Minn. 248, 253, 110 N.W.2d 201, 205 (1961) (a decision on appeal will not generally be reexamined on subsequent appeal, but questions not decided may be considered on a second appeal). It seems to us, however, that we do not have the same issue of class certification now that we had in *Alevizos I.*

■ In *Alevizos I*, the proposed class consisted of "approximately 27,565 homes, apartments, churches, places of business, and other buildings," located within the four corridors or sound cones emanating from the airport. *Alevizos I*, 298 Minn. at 473–74, 216 N.W.2d at 655. Because the proposed class was so diverse and lacked commonality of issues, this court ruled that a class action was inappropriate, although three members of the court disagreed. *Id.* at 497 n. 7, 216 N.W.2d at 667 n. 7.

Here, however, the trial court has allowed a class action limited to all persons with residential property located within the area defined as Zone 1 by the Metropolitan Noisemap Project. About 2,000 property owners are involved. The Metropolitan Noisemap Project was initiated in 1977, designed in part to identify the current and probable future aircraft noise environment around Minneapolis-St. Paul International Airport and to establish practical guidelines for land use compatibility planning. The Noisemap is a computer-generated series of contours surrounding the airport, and it identifies four zones of increasing intensity of noise exposure. Zone 1, the area closest to the airport and located at the ends of all three runways, was deemed to be subject to "severe and permanent" noise exposure. The noise impact in Zone 2 was considered "serious," while the noise in Zones 3 and 4 was considered "significant" and "moderate," respectively. The Noisemap was adopted by the Metropolitan Council in March 1983. *See* Metropolitan Council of the Twin Cities Area, Guidelines for Land Use Compatability with Aircraft Noise 4–6 (March 1983).[1]

---

1. The "Noisemap" computer program was developed by a firm of accoustic consultants for use by the United States Air Force to assess noise

impact around military facilities. It has been adapted for use at civil airports. The program has been used by the Environmental Protection

Clearly, in this situation, the class currently proposed is markedly different from that proposed 15 years ago, both in numbers and types of properties involved and in the scientific and logical basis for defining the members of the class. We hold that the doctrine of "law of the case" is inapplicable and does not preclude consideration of the new proposed class on its own merits.

## II.

We now reach the main issue, which is whether the proposed class meets the requirements of Minn.R.Civ.P. 23. This requires, first, a consideration of Rule 23.01, and if those prerequisites are met, then a consideration of the maintenance requirements of Rule 23.02.

 1. We are satisfied that the proposed class meets the four prerequisites of Rule 23.01.[2] A class of 2,000 residential homeowners is clearly so numerous as to make joinder impracticable, thus satisfying the first prerequisite. The second prerequisite is that there be questions of law or fact common to the class, *i.e.*, that there be common legal grievances among the class members' claims. *See Compact Electra Corp. v. Paul*, 93 Misc.2d 807, 403 N.Y. S.2d 611 (1977). Here all members of the class have properties which share in common "severe and permanent" aircraft noise as delineated on the Noisemap, and all seek the same inverse condemnation of avigational easements. The third prerequisite is typicality, that is, that the representative parties have an interest compatible with that of the class sought to be represented. *See Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160, 165 (S.D.N.Y.1973). This test, too, is met. The fact that some members of the class may prefer to cooperate with the government to minimize aircraft noise rather than to seek inverse condemnation damages, does not, as the Airport Commission argues, defeat typicality. Any class member who wishes to do so may opt out. Also, typicality refers to the potential for rivalry and conflict which may jeopardize the interests of the class, *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287, 291 (D.Del.1975), and that kind of tension is not involved here. Finally, the fourth prerequisite is that the representative parties will fairly and adequately protect the interests of the class. This means plaintiffs' interests must coincide with the interests of other class members and that plaintiffs and their counsel will competently and vigorously prosecute the lawsuit. *See Jenson v. Financial Corp.*, 404 F.Supp. 806, 811–12 (D.Minn.1975). This test is fully met.

2. The four prerequisites having been satisfied, the more difficult question remaining is whether the proposed class meets the requirements of Rule 23.02(3).[3] We think this last hurdle is not overcome.

Agency for noise assessment at several major "hub" airports around the nation.

The basic input data to the Noisemap involves information about the airport configuration, runway use, flight tracks, number and type of aircraft operations and flight procedures. In addition, since an objective of the study was to assess the present noise environment around the airport and project future conditions, similar data was developed for the years to 1990. The contours reflect aircraft-generated sound levels. They do not reflect other sound sources, as, for example, background or ambient noise. The contours basically reflect the noise exposure of the annual average day from overall operation of the airport, and thus take into account peak and nonpeak operating conditions. Metropolitan Noisemap Project, Technical Report of the TAC Aviation Committee II–6 to III–1 (December 1978).

2. Minn.R.Civ.P. 23.01 reads:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

3. Minn.R.Civ.P. 23.02(3) (1985) provides that a class action may be maintained if:

[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

Under Rule 23.02(3), the two basic conditions that must be met before a class action may be maintained are whether common questions predominate over individual issues and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This determination "approaches a grant of discretionary power to allow class actions whenever the court sees fit." 2 D. McFarland & W. Keppel, *Minnesota Civil Practice* § 1472 at 443 (1979). Whether a class action is best suited here can only be determined by again analyzing the property interest sought to be taken.

In *Alevizos I*, we stated that the property interest involved consisted of the owner's right to the enjoyment of his property. While cautioning that every metropolitan residential owner must expect a certain amount of discomfort, disquiet, and inconvenience from modern, urban living, we went on to say, in the case of aircraft noise, that "when those interferences reach the point where they cause a measurable decrease in property market value," the law will consider this to be a compensable taking for which inverse condemnation will lie. *Alevizos I*, 298 Minn. at 486–87, 216 N.W.2d at 662. The test for a taking, we stated, was: (1) The landowner must show "a direct and substantial invasion of his property rights of such a magnitude he is deprived of the practical enjoyment of his property," and (2) "such invasion results in a definite and measurable diminution of the market value of the property." *Id.* at 487, 216 N.W.2d at 662. In *Alevizos II*, 317 N.W.2d at 359, we reaffirmed this test, pointing out that a "[d]iminution in one's enjoyment and use of property is not the same as a diminution in market value" and that "[a]n affront to one's sensibilities becomes legally cognizable here only when it becomes a servitude on the property itself, depressing its value on the market." In *Alevizos I*, we observed, "that with the test we have prescribed there may well be a dispute as to the property, if any, that is to be included in the inverse condemnation proceedings"; however, we went on to say, "[n]onetheless, the court should make that determination initially based upon our interpretation of Thomsen and the market-value test here prescribed." *Alevizos I*, 298 Minn. at 488, 216 N.W.2d at 662.

Apparently plaintiffs contemplate that their class action will apply to the mandamus stage of this proceeding, where the court decides whether to mandate condemnation; if condemnation is mandated, then the proceedings enter a second stage where damages for each individual parcel are determined separately. The mandamus court, in the first stage, will have to determine if aircraft noise constitutes such a direct and substantial invasion of property rights that the owners are deprived of the practical enjoyment of their properties. Presumably, this can be shown by expert testimony on aircraft activity and noise levels,[4] probably supplemented by some anecdotal testimony of a representative sampling of the property owners. Moreover, one could expect that the impact of noise invasion, even allowing for differences in housing construction, would be about the same for all properties in the same zone. Consequently, it would appear that a class action is admirably suited on the issue of substantial noise invasion.

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

4. As plaintiffs note in their brief, "The Noise-map zones are not offered * * * to prove a specific level of noise within the zones, nor to show the effect on enjoyment of property within the zones, but rather to facilitate finding a class in which the common legal or factual issues will predominate."

The difficulty, however, is that a class action judgment of a direct and substantial invasion of enjoyment of property rights does little to advance an end to the litigation. Even with such a class action judgment, the class members have yet to establish any right to inverse condemnation. There has yet been no conversion of the invasion of property rights into a diminution in market value of the properties in the class, and, in the absence of this conversion, there has been no taking of any property interest. Nor can it be presumed that some measurable diminution in market value attributable to the noise invasion has occurred, as the trial in *Alevizos II* illustrates. Market values, following general housing market trends, may fluctuate in Zone 1 notwithstanding the noise, and non-noise factors affecting market value must be eliminated. In other words, market value diminution has to be proved.

■ Plaintiffs suggest, nevertheless, that after a class action judgment adjudging a substantial invasion of property rights, the class members might then proceed in 2,000 separate condemnation actions to determine their individual damages, and at that time diminution in market value would be shown. To prove loss of market value, however, each property owner would have to show the nature and extent of the aircraft noise affecting his property's value, after first sifting out the non-noise factors. In other words, much the same proof that was presented in the class action would again be presented in each individual condemnation action. Diminution in market value is so wedded to noise invasion that the former cannot be proved without again proving the latter.

We cannot see where it profits either the litigants or the administration of justice to have a repeat performance on a key fact issue. As long as there has to be an individual condemnation action to establish damages for each parcel in any event, it would seem more economical, more intelligible, for each plaintiff to prove the invasion of his property interests in his own individual inverse condemnation mandamus action.

■ One other possibility exists. The class action might decide two fact issues, *i.e.*, not only whether there is a direct and substantial invasion of enjoyment of property rights, but also whether such invasion results in *some* definite and measurable diminution in market value for all 2,000 properties. With both of these findings favorable to the class members, the mandamus court could rule that a compensable taking has occurred for all class members and then let the actual damages for each tract be determined in individual condemnation proceedings. This alternative, however, is subject to the same infirmities as the first alternative. First of all, if the class members are successful in establishing some diminution in market value caused by airport noise for all properties in the class, it will still be necessary in the individual condemnation actions for each plaintiff to show the diminution in market value of his own parcel to prove his individual damages. This proof would inescapably require resubmitting much of the same evidence that was presented in the class action to show diminution of market value as to all tracts. Secondly, determining diminution of market value in the class action would seriously affect the commonality of the issues to be tried in the class action. Class members who purchased their properties in different years have different issues of fact to be resolved. If, for example, plaintiff buys a Zone 1 house in 1980, he presumably buys at a market price already discounted for aircraft noise existing at that time. Plaintiff has no diminution in market value of his property unless he shows that the noise level has increased since 1980 and such increase has measurably depressed the market value of his property. To put it another way, each class member, to prove a taking, must show that an increase in the noise level since he acquired his property has diminished the market value of his property.

*Alevizos I* carefully considered and discarded trespass and nuisance and decided upon inverse condemnation of an avigational easement as the best way to resolve the conflicting societal interests. It is the unique nature of this property interest and its proof requirements that makes use of a class action inappropriate.

In our view, since there must be an individual determination of damages and since the proof needed in the individual action, whether or not there is a class action, will to a large extent duplicate the proof in any class action, we do not find the class action to be a superior method of handling this litigation. We can conceive of a situation where perhaps joinder of some claims might be possible—for example, similar properties in the same block purchased at about the same time—but any class action, in our opinion, would be inappropriate. A class action would only tend to confuse, complicate, and duplicate judicial proceedings. This also was the conclusion of the California Supreme Court. In *City of San Jose v. Superior Court of Santa Clara County,* 12 Cal.3d 447, 463, 525 P.2d 701, 712, 115 Cal.Rptr. 797, 808 (1974), the court reversed a trial court certification of a class action for inverse condemnation of avigational easements, stating, "Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability." We therefore reverse the trial court's class certification.

Reversed.

SCOTT, Justice (dissenting).

Article I, Section 8, of the Constitution of the State of Minnesota provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his * * * property * * * and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, comformable to the laws." The majority frustrates this provision when it reverses certification of this class. On the one hand, it holds that denying a class action in the first *Alevizos* action was not the law of the case: "Clearly * * * the class currently proposed is markedly different from that proposed 15 years ago, both in numbers and types of properties involved and in the scientific and logical basis for defining the members of the class." This presumably means that by denying the class action in the first case, we did not mean to preclude a class action from ever being brought. Nevertheless, when faced with a class the trial court called "the purest class of all possible classes surrounding the airport," the majority again denies certification. In other words, we have effectively precluded a class action from *ever* being brought in such a proceeding.

A class action would be the superior method of adjudicating the controversy in the instant case. In determining whether a class should be certified, the balance should be swung in favor of the class action. *Thomas v. Clarke,* 54 F.R.D. 245, 249 (D.Minn.1971). Class actions serve a valuable policing function for remedying legal wrongs when individual claims are small and, hence, are unlikely to be brought. *See Buchholtz v. Swift & Co.,* 62 F.R.D. 581 (D.Minn.1973). If there is to be an error, "let it be made in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *Id.* at 595 (citation omitted).

The majority argues that because a separate determination of damages must take place the class action is not the most efficient means of adjudicating these claims. In determining whether common questions predominate over individual questions, courts have held that the amount of damages is invariably an individual question and does not defeat class action treatment. *See Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. den.* 429 U.S. 816, 97 S.Ct.

57, 50 L.Ed.2d 75 (1976). Courts have consistently recognized that the possibility of separate trials on individual issues does not bar a class action. *See Epstein v. Weiss,* 50 F.R.D. 387, 393–94 (E.D.La.1970); *Dolgow v. Anderson,* 43 F.R.D. 472, 490 (E.D. N.Y.1968).

Other states have allowed a class action for inverse condemnation. In *Foster v. City of Detroit, Michigan,* 254 F.Supp. 655 (E.D.Mich.1966), *aff'd* 405 F.2d 138, 146 (6th Cir.1968), landowners brought a class action against the city for damages for unlawful taking. The defendant asserted that because of the number and variety of proofs necessary to each separate parcel of land a class action was not appropriate. 254 F.Supp. at 668. The court disagreed and held there was a sufficient community of interests. The court said: "There are important questions of law and fact affecting all members of the class which override the factual differences regarding the damages suffered by each individual." *Id.*

Separate trials determining individual damages are customary in such matters. In this situation, if the trial on liability is favorable relative to the entire class, the posture is similar to that when a typical condemnation petition has been filed. The petition is required to list all of the landowners known to be affected by the action, and a hearing is conducted on whether a taking is necessary. Minn.Stat. §§ 117.-055–.075 (1984). At that point, similarly to what is requested here, the landowner is entitled to an impartial tribunal to assess damages. *State v. Anderson,* 220 Minn. 139, 19 N.W.2d 70 (1945); *State ex rel. Hunt v. City of Montevideo,* 142 Minn. 157, 171 N.W. 314 (1919); *State v. Chicago, M. & St. P. Ry. Co.,* 36 Minn. 402, 31 N.W. 365 (1887). Different properties may be affected differently. *Cf. United States v. River Rouge Improvement Co.,* 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339 (1926). In fact, sometimes benefits accrue to a particular parcel of land in a condemnation action so that it is determined that no damages should be awarded to that parcel's owner. *Nelson v. County Board of Nicollet County,* 154 Minn. 358, 191 N.W. 913 (1923); *Burg v. Township of Rosedale,* 143 Minn. 424, 174 N.W. 309 (1919). This is a separate issue for the trier of fact. *Chicago, R.I. & P. Ry. Co. v. City of Minneapolis,* 164 Minn. 226, 205 N.W. 640 (1925).

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. 1, § 13. Inverse condemnation is a remedy designed to protect the public and to assure that the landowner whose property was taken receives just compensation. *Chicago, R.I. & P. Ry. Co,* 164 Minn. 226, 205 N.W. 640 (1925). To say that a class action in this instance would result in duplicative trials misses the mark. As the trial court stated, "Disallowing a class here would effectively prevent many of the class members from recovering any damages which may have been incurred." The class action would also avoid inconsistent results. The only conceivable way that most of these parties can afford to bring this action to be compensated is to allow them to bring a class action on the direct and substantial invasion issue and *then* permit a separate determination of damages. The majority of the people would need to participate only in their particular damage action. To force these parties to litigate separately would be burdensome not only for the parties, but for the judicial system. The parties, if they prevailed on the liability issue, could fashion an agreement whereby a structure similar to the special master in the federal courts could be approved to handle the individual damage awards, thus saving valuable court time.

Denying a class action in this case denies these citizens their right under our state constitution by effectively preventing them from an affordable means of bringing this

**518**

action. I would uphold the certification of the class.

YETKA, Justice (dissenting).
I join in the dissent of Justice Scott.

WAHL, Justice (dissenting).
I join in the dissent of Justice Scott.