## IN THE MATTER OF PAVING LINCOLN AVENUE, ETC. TRUSTEES OF MACALESTER COLLEGE v. CITY OF ST. PAUL.[1]

April 6, 1923.

No. 23,409.

Paving assessment in St. Paul governed by amendment of charter—assessment initiated when finance commissioner makes it.

By an amendment to the home rule charter of St. Paul, ratified at the November 2, 1920, election, and effective 30 days thereafter, it is provided that the amount assessed against abutting property for paving any street shall not exceed the cost of a strip of such paving 12 feet wide adjacent to such property. The amendment applies to the assessment for an improvement which was commenced before it became effective, and was then in process of construction, in which the proceeding for an assessment was initiated thereafter, the assessment by the commissioner of finance, as provided in the charter, being the initiation of the assessment proceeding and the determining date of the applicable charter provision.

In the matter of confirmation of assessment of benefits arising from paving Lincoln avenue, St. Paul, the trustees of Macalester College filed objections in the district court for Ramsey county. The matter was heard by Hanft, J., who made findings approving the assessment. From the judgment entered pursuant to the order for judgment, the trustees of Macalester College appealed. Reversed.

*Bishop H. & Paul D. Schriber*, for appellant.

*Carlton F. McNally* and *Arthur A. Stewart*, for respondent.

[1] Reported in 193 N. W. 116.

DIBELL, J.

Appeal by the trustees of Macalester college from a judgment of the district court confirming an assessment of benefits against its property for paving Macalester avenue which extends north and south along the westerly side of the college campus.

St. Paul is a home rule city. The assessment was made under sections 233-257 of its charter. Upon a written application of three or more interested owners of property subject to an assessment for a proposed improvement, or upon a written proposal by any councilman, the common council may by a so-called "preliminary order" direct the commissioner of public works to investigate. He reports to the commissioner of finance. The latter makes his report to the council and includes the report made to him by the commissioner of public works. Section 240. If the council approves the report it makes a so-called "intermediary order" to proceed with the improvement. The intermediary order fixes a date for a public hearing not less than 20 days later and notice is given. Section 241. At this hearing the council, if favorable to the improvement, adopts a resolution known as a "final order" which states the nature of the improvement and instructs the commissioner of public works to prepare plans and proceed with the making of the improvement. Section 242.

The preliminary order affecting Macalester avenue was approved July 31, 1919, the intermediary order November 12, 1919, and the final order December 10, 1919.

After the cost of construction is determined the commissioner of finance makes an assessment upon the lots benefited by the improvement, and reports the assessment to the council. Section 244. If the assessment is satisfactory to the council it approves it and fixes a time for hearing not less than 20 days later, and the commisisoner of finance gives notice of the hearing. If the assessment is then satisfactory the council ratifies it and orders it submitted to the district court for confirmation. Section 245. The commissioner of finance then files a certified copy of the assessment with the clerk of the district court. A notice is given by the clerk requiring those objecting to answer. If the assessment is approved

by the court an order confirming it is entered and a judgment is rendered against the property assessed. Sections 246-247. This appeal is from such a judgment.

The assessment was approved by the council under section 245 on November 30, 1921, and the hearing was set for December 28, 1921. The assessment was ratified by the council under section 245 on January 4, 1922, and confirmed by the district court under sections 246-247 on June 19, 1922.

Section 235 originally was as follows:

"The cost of any one or more of the improvements aforesaid shall be borne, met and paid for by the levy of an assessment or assessments therefor upon the property deemed benefited thereby. And any two or more of the improvements aforesaid may be made at the same time and part of the same proceeding, and the assessments therefor likewise levied and collected.

"Provided, however, that nothing herein shall prevent the council from appropriating sufficient money from the general funds of said city to pay the cost of any improvement of street intersections and crosswalks therefor."

By an amendment ratified by the voters at the election of November 2, 1920, and effective 30 days thereafter, the following was added:

"Provided further that the amount which may be assessed against abutting property for paving any street, boulevard, parkway, or other highway shall not exceed the cost of a strip of such pavement twelve feet wide adjacent to the property thus assessed. The cost of the pavement, over and above the amount assessed against all property benefited, shall be paid out of city revenue or from money raised by bond issue or both. Where a permanent pavement has once been laid and paid for in whole or in part by special assessment, such benefited property shall not again, for a period of fifteen years, be assessed for repavement or for repairing pavement."

On December 2, 1920, when the charter amendment became effective, 40 per cent of the work was done. It was completed about November 27, 1921.

The assessment was made on the basis of benefits and exceeded the cost of a strip of pavement 12 feet wide in Macalester avenue adjacent thereto. If the 1920 charter amendment governed, the assessment was excessive.

The amendment makes no reference to pending improvements. It does not except them. It was effective from the date of its ratification. The language limiting an assessment for benefits is explicit. There is none to be made thereafter in excess of the limitation. The voters chose to say that thereafter all cost in excess of the limitation should be paid from the city funds. They gave expression to a feeling that the benefits from street paving are more largely general and less local than the former system of assessing recognized. They made it effective by imposing a greater proportion of the burden on the general tax paying public.

In Pittsburgh Coal Co. v. City of St. Paul, 150 Minn. 166, 184 N. W. 788, the same charter amendment was involved. Before the charter became effective the work had been completed and the assessment had been made by the commissioner of finance under section 244, and approved by the common council and the date of the public hearing fixed under section 245. The public hearing and the confirmation by the court were had afterwards. The old charter was held to apply. That case is essentially different from the one at bar. Here only 40 per cent of the work was done when the amendment became effective. It was completed 11 months later. The charter was in effect for 11 months when the assessment proceeding was initiated by the assessment by the commissioner of finance under section 244. The assessment by the commissioner of finance is to be taken as the date determining the controlling charter provision. We have examined the cases cited from other jurisdictions, and reach our conclusion after a consideration of them.

The assessment should be made to conform to the charter limitation. This applies to the assessment of the college campus as well as to the few pieces of property owned by the college abutting the

westerly side of Macalester avenue, assuming that there is an excessive assessment affecting them. The parties do not agree upon the question of the proper adjustment on the basis of the cost of a 12-foot strip, and the record before us is not clear. If the cost of street intersections affects the result the rule announced in the Snelling avenue case, supra, pages 168, 170, should be followed. It will be within the discretion of the trial court to take additional evidence if the record does not show the proper amount of the assessment. The judgment will be modified by the trial court to correspond with the assessment made in accordance with the rules announced.

Reversed.