# MINNESOTA TRANSFER RAILWAY COMPANY v. CITY OF ST. PAUL.[1]

## No. 24,555.

## October 30, 1925.

**Railroad company cannot complain it had no opportunity to object to street improvement.**

1. A railroad company, owning abutting lands to a local improvement, enjoying an exemption from special assessments by virtue of the law imposing a gross earnings tax, is entitled to be heard in the matter of making such improvement by virtue of its contingent liability arising out of the possibility of a revocation of such exemption, and, by not availing itself of the jurisdictional notice given by the city officials, it cannot complain, after the revocation of its exemption, that it did not have an opportunity to be heard in opposition to the improvement.

**Special assessment must be levied pursuant to law when levy is made.**

2. A special assessment for a local improvement must be levied pursuant to the law in force when the assessment proceedings were initiated and consummated, and not the law in force at the time the improvement was ordered.

**Amendment authorizing levy of special assessments on railroad property valid.**

3. Chapter 533, L. 1919, is constitutional.

### AFTER REARGUMENT.

### February 5, 1926.

**Special assessment on railroad property valid only as to improvements made after amendment of constitution.**

4. Appellant is a railroad corporation. Prior to December 1, 1920, it was exempt from special assessments against its railroad property. On that date this exemption ceased because of the adoption of a referendum amendment authorized by chapter 533, L. 1919. In 1916 a

[1] Reported in 205 N. W. 609, 207 N. W. 320.

street improvement was ordered. The notices provided by the city charter in assessment proceedings were given. Appellant claimed that · the first notice was in law a nullity. Part of the work was done· in 1917. The balance was done in 1921. The assessment was made in 1922. The city council passed a resolution ratifying the assessment and submitted it to the district court for confirmation and judgment. *Held*:

(1) That the first notice was effectual for the purpose of bringing the property within the improvement.

(2) That the ratification of the assessment and passing of it to the court for confirmation and judgment made a prima facie case showing that the charter notice for hearing on the assessment was given.

(3) The law in force at the time of the making of the assessment controls, but it cannot include improvements made to the abutting property during the period of exemption—such property may be assessed only for that portion of the improvement made after the exemption ceased.

1. See Constitutional Law, 12 C. J. p. 1261, § 1062.
2. See Municipal Corporations, 28 Cyc. p. 1106.
Municipal Corporations, 28 Cyc. pp. 981 n. 56; 1106 n. 43; 1133 n. 28; 1145 n. 59; 1178 n. 50 New.

In the matter of assessment of benefits from paving Prior avenue, St. Paul, Minnesota Transfer Railway Company answered praying that the taxes and assessments against its property be held to be commuted by payment of its general gross earnings taxes. The matter was heard by John B. Sanborn, J., who confirmed the assessment. The railway company appealed from the judgment. Modified.

*Richard L. Kennedy*, for appellant.
*Carlton F. McNally* and *Arthur A. Stewart*, for respondent.

WILSON, C. J.

This is a proceeding to enforce the payment of a special assessment for a local improvement, namely, paving on Prior avenue. The appellant owns land abutting on this avenue. It is a railroad corporation. The city assessed it for the improvement. It interposed an answer. It now appeals from the judgment entered against it.

Section 2226, G. S. 1913, provided a gross earnings tax and gave an exemption of all taxes and assessments in lieu thereof. By virtue of the amendment to this statute resulting from the approval of chapter 533, p. 755, L. 1919, in accordance with article 4, § 32a, of the state Constitution, the words "and assessments" were eliminated. This was confirmed by the proclamation of the Governor on December 1, 1920.

In 1917 the city council passed a final order for the improvement, and work was commenced at once so that the curbing, sewer and water connections were made without delay. Due to the conditions incident to the World War, no paving was done until May 12, 1921, when it was commenced; it was completed on July 5, 1921. When the work was ordered, the railroad company was exempt from liability, but before the assessment was made the exemption had been revoked.

The city charter provides that, when a remonstrance is signed and filed by 4/5 of the abutting property owners in opposition to such improvement, the same shall be denied. If appellant and other objectors had done this, they would have had the necessary 4/5, and had appellant considered their abutting property, which was owned for railroad purposes, liable for assessment, it and others would have filed such remonstrance, but the charter further says "provided, however, that no such petition of remonstrance shall have any force or effect whenever the council, by * * * a five-sevenths vote of all its members elect including the mayor, and adopted within twenty days from and after filing of such petition, shall declare such improvement or improvements to be a public necessity."

Upon the inauguration of such special improvement the charter provides for notice to the property owners. This notice was given to appellant and it wrote a letter to the city acknowledging the receipt of such notice and announced that it would not pay any part of the cost of the improvement unless legally compelled to do so.

The principal inquiry is, can an improvement ordered and commenced at a time when the property of appellant was not liable to

assessment, be assessed against the property, the improvement having been completed and the assessments made after the exemption from assssment has been revoked?

The appellant's urgent opposition to an affirmative answer to the inquiry is that such would infringe upon its constitutional right and would be a taking of its property without due process of law, because it would be compelled to pay without an opportunity to be heard in opposition to the desirability and necessity of the improvement. It insists that it had no opportunity of being heard—not because of lack of notice which is acknowledged, and we assume the notice was in form an invitation to appear and participate as an affected property owner—but because it says under the law it had no right to be heard even if it had appeared. It is suggested that, had it appeared in response to the notice, or otherwise, the city would have been strictly within its legal rights to have refused to hear them.

Whether the conclusion is right depends upon what the law is. Appellant begs the question. The appellant enjoyed an exemption from paying assessments. It had been given by the people. It could be taken away by the people. The exemption was in the nature of a privilege. It was revocable at the will of its creator. It was not a vested right. Appellant was charged with this knowledge and when it received the notice it had to decide whether it would act upon the possibility of its exemption being revoked or upon the theory that the exemption would continue. It elected to pursue the latter course. It had a right to notice, which it received; it had a right to appear and be heard, which it failed to exercise because of a possibility of a revocation of its exemption and the city could not refuse to hear it as an interested party. It received the legal notice. It refused to heed it. It took its chances on the outcome. The city did all the prerequisite things to acquire jurisdiction. The law tendered it a day in court to litigate the question of advisability of making the improvement. It did not avail itself of this opportunity. It cannot now complain of having had no opportunity to be heard. State v. Holmes, 162 Minn. 173, 202 N. W. 440.

The revocation makes no reference to pending improvements. It does not except them.

The learned trial court in his memorandum gave a very potent reason in support of the conclusion reached when he said:

"If there had been no exemption from special assessments prior to December 1, 1920, and if the legislature had seen fit to so amend the law as to grant such exemption, no one would contend that the Railroad Company's property would be liable for an assessment for an improvement which was not completed prior to the going into effect of the amendment and for which no assessment proceedings had been initiated. This being so, clearly, the Railroad Company is liable for an assessment * * * properly levied subsequent to the revocation of the exemption from special assessment."

In State v. Johnson, 111 Minn. 255, 126 N. W. 1074, ditch assessments were completed August 1, 1904. Lands of the United States were not subject to liens assessed in drainage proceedings prior to an act of Congress passed May 20, 1908. The property owners who objected made no resistance to the proceedings until after the construction of the ditch and until it was sought to obtain judgment against their lands for the first instalment of the assessment. They then claimed that their property was not subject to taxation. They had made entry under the United States Homestead Laws and the United States remains the owner of such land until final proof is made and the entryman is entitled to a patent without the performance of any further act upon his part. Assessments were levied on 43 tracts. Final proof was made as to 13 of these tracts before August 1, 1904, and as to 30 after August 1, 1904. The court remanded the proceedings with instructions to enter judgment subjecting to assessment the 13 tracts which were finally proved pursuant to the homestead laws prior to the filing of the assessment roll on August 1, 1904, disregarding the time when the improvement was ordered and the time when the jurisdictional notices in the proceedings were given, although the tracts may then have been exempt from assessment.

In this case no assessment proceedings could have been initiated before the revocation of the exemption, because the work was not completed. The case of In Re Paving Snelling Avenue, 155 Minn. 168, 193 N. W. 115, and same in Re Paving Lincoln Ave. 155 Minn. 171, 193 N. W. 116, call for affirmance in this case. There is little difference in principle in changing the law so as to modify the extent of assessment or in changing the law so as to remove the exemption from taxation. Our conclusion is consistent with Pittsburgh Coal Co. v. City of St. Paul, 150 Minn. 166, 184 N. W. 788. This proceeding is instituted pursuant to the provisions of the city charter. It has not been repealed or changed. Hence section 10930, G. S. 1923, which protects "any right accrued" under a law which has been repealed is of little importance. We hold that under the facts in this case the law which was in force when the assessment proceedings were initiated and consummated should control.

Appellants claim that chapter 533, p. 755, L. 1919, is unconstitutional. The only reason for the constitutional amendment of 1871 was to permit a gross earnings tax which arose from the fact that the Constitution then provided that all taxes were levied on a cash valuation. Sec. 1, Art. 9, State Constitution. The amendment requires that all amendments to the law must be ratified by a vote of the people. The provision for amendment shows that amendments are contemplated. Obviously the gross earnings tax is in place of general taxes and permitting the assessment of railroad real estate for special improvements is only requiring the railroad to pay for special benefits accruing to its property. It treats all railroads alike. We do not think that this in any way contravenes any provision of the Constitution.

Affirmed.

QUINN, J. (dissenting.)

I dissent. Sections 241 and 242 of the Saint Paul charter require that, upon approval of the petition for the improvement, but before the final order granting the petition, a public hearing must be had upon the public necessity for, and the feasibility of, the

project, at which all interested persons shall be heard. Such hearing is judicial in character. It was had on February 29, 1916. It is conceded that appellant received the post-card notice thereof, but at that time it was not an *interested* party. It had no legal right to be heard. We are here dealing with legal propositions, and at the time of that hearing appellant was legally a stranger to the proceeding. Having no legal right, it had no right at all. When it became an interested party and acquired the right to be heard, the time to be heard had long passed. The bare possibility that four years later its property might, by constitutional amendment, be subjected to assessment, is altogether too weak a ground on which to hold it an interested party. The city council had the undoubted right to refuse to hear it; the proponents of the improvement had the undoubted right to object to its being heard. Appellant's objection or remonstrances would have been unavailing. The provisions of the city charter can mean nothing else than that a landowner, whose land is, by any process, to be made liable for an assessment, has an absolute right to an opportunity to be heard upon the necessity for, and the feasibility of, the proposed improvement. Taking into consideration all the circumstances of this entire situation, it seems to me clear that appellant was deprived of that right. For that reason there is lacking here an essential element of due process of law. State v. Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161; State v. District Court of Ramsey County, 90 Minn. 294, 96 N. W. 737; Sears v. Mayor, 73 N. J. L. 710, 64 Atl. 1062, 118 Am. St. 724. The amendment of 1920 was clearly not intended to be retroactive so as to take away appellant's right to be heard upon the determination of whether the improvement was necessary or would promote the public interests. 12 C. J. p. 1234, § 1009. No doubt the council had jurisdiction to order the improvement; no doubt the amount, method and manner of the assessment are governed by the law in force when it is made; but here, the council never acquired any right to assess this property because of the fatal defect in their proceedings as to *this party and this property.*

STONE, J. (dissenting.)

I agree that the amendment of the gross earnings tax law is constitutional. I agree also that it was competent for the legislature so to amend the old law as to subject railroad companies to assessments for previously instituted improvement, not complete however and not assessed for at the time of the amendment. "If the other necessary conditions exist," special assessments "may be authorized after, as well as before, the expenditure is incurred." Warren v. Street Commrs. 187 Mass. 290, 72 N. E. 1022; Hall v. Street Commrs. 177 Mass. 434, 59 N. E. 68.

So it is not a question of power but of intention. Was it the intention of the legislature to abrogate, as of December 1, 1920, the then accrued right of railway property to immunity from assessment for local improvements, the proceedings for which had been instituted five years previously? Or, on the other hand, was it the intention not to affect pending proceedings at all but to make the change effective only on those thereafter instituted?

Stopping there for the moment, I cannot but consider it a confusion of terms to refer to the old law as granting an "exemption" of railroad property from special assessments. My understanding is that, under our gross earnings tax law, no railroad property is exempt from taxation. The gross earnings tax is simply a substitute for all other kinds including, under the old law, special assessments. As such a substitute it is a tax on *all* railroad property. So our problem is not whether it was the intention of the legislature to repeal an exemption from taxation, but whether it was to make a change in the method of taxation retroactive so as to affect proceedings pending and instituted long before. The strong presumption is of the absence of such an intention, unless the law itself makes its presence clear, which this one does not.

Section 10930, G. S. 1923, has long been a part of our law. It announces a rule of statutory construction in effect everywhere and in most of the states by a similar statute. So far as it applies here, it is to the effect that the repeal of a law which itself "repealed a former law" (we are considering such a repealing law), shall not

"affect any right accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the law repealed." I agree with the learned trial judge that the Prior avenue proceeding was not a "proceeding commenced" within the literal application of that statute, because it was not instituted or pending strictly "under or by virtue of the law repealed." But, within the meaning of this statute, the appellant had, when the new law took effect, not an exemption from special assessments, but the right to have its gross earnings tax stand in lieu of them. While, as observed by the Chief Justice, that was not a vested right in the constitutional sense, it was clearly a "right accrued" within the meaning of that portion of the statute preventing a repealing act from affecting "any right accrued   *   *   *   by virtue of the law repealed."

It follows as a matter of statutory construction that the amendment (effective December 1, 1920), could not apply to a proceeding instituted five years before and with respect to which, as it then stood, the appellant had the "right accrued" already referred to. If it had that effect, the statute would be retroactive in the extreme. Moreover, we would have a most unusual case of disregard by the legislature of a long-settled legislative policy without an expression on their part of that intention.

The Macalester College case and the argument based thereon give me no trouble. Here we have a very different situation for a new burden, not in existence at the time the proceeding was commenced, is sought to be imposed upon the property owner. The issue is the converse of that in the Macalester College case, where the amendment in question was one to *relieve* some affected property from a portion of the burden imposed by the old law. Both the competency of the legislature *and its intention* were clear, so there can be no doubt about the result. Certainly no comment is necessary to distinguish the present problem where the object of the amendment is not to relieve from an old but to impose a new burden. A legislative intention to make the change applicable to pending proceedings is not clear, to say the least. In the absence of such

an intention the rule of Cincinnati v. Seasongood, 46 Oh. St. 296, 21 N. E. 630, should apply. The gist of that decision is indicated by its syllabus, which is this:

"A municipal corporation having through its proper boards and officers passed a resolution and ordinance to improve a street, in its assessment of the cost and expense of the improvement upon abutting property, it should be governed by the law in force at the time of the passage of its improvement ordinance, with respect to the manner of assessment and the rights and liabilities of the owners of abutting property."

That result was put in part upon the ground that there was "nothing in the language" of the new legislation, "passed after the ordinance to improve, which gives it other than a prospective operation." There is equally absent from the law we are now considering any expression of an intention to give it "other than a prospective operation." So the conclusion that the amendment was intended for prospective operation only is manifestly open. Therefore, under familiar rules, it should be adopted and the judgment in all respects reversed.

The Seasongood case was followed in Reed v. Bates, 115 Ky. 437, 74 S. W. 239, decision being placed upon the ground that there was no apparent intention of the legislature to make an amendatory act effective on "a right accrued" under the old law; the court saying:

"There is no clause in the amendment indicating that the General Assembly intended the amendment should act retrospectively. It is urged that the General Assembly had the right to repeal the ordinance in question. It is a sufficient answer to say it manifested no purpose to do so * * *. The passage of the ordinance (for the improvement) was an act done, and when done the rights of the lot owners as to the cost of the improvement were fixed. Hence the rule for the construction of statutes prescribed by the General Assembly shows that it was not intended to affect any rights which had been fixed by ordinance and statutes then in force."

The statutory rule "for the construction of statutes" so given controlling weight in Kentucky is the same as that in force here under

section 10930, G. S. 1923, but considered in the majority opinion as of "little importance." See also Benshoof v. City of Iowa Falls, 175 Iowa, 30, 156 N. W. 898.

Very properly we indulge the presumption that the legislature is always mindful of constitutional limitations and disposed to abide them. Why should we not assume that it is equally mindful of its own mandates, particularly one so long established and so consistently adhered to as section 10930? Such an assumption would make impossible the conclusion of the majority.

The Massachusetts cases relied upon by respondent, and first above cited, do not touch at all the instant problem of statutory construction. They have to do with a statute passed for the avowed purpose of enabling the city of Boston to make an assessment for improvements commenced, and apparently completed and assessed for, under a former statute which had been held unconstitutional. The *express intention* was to give the statute a retroactive effect. In fact, its sole purpose was to reach back to prior proceedings and completed improvements and provide a means for the collection of their cost.

### AFTER REARGUMENT.

On February 5, 1926, the following opinion was filed:

WILSON, C. J.

The facts more fully appear in the former opinion. Prior to December 1, 1920, railroad corporations were not required to pay special assessments since they paid a gross earnings tax in lieu of all other taxes and assessments. G. S. 1913, § 2226. The referendum amendment authorized by L. 1916, p. 755, c. 533, was declared adopted by a proclamation of the Governor of the state of Minnesota on December 1, 1920. On October 14, 1916, the city council passed a final order for paving Prior avenue. The proceedings were inaugurated and carried on pursuant to chapter 14 of the charter of the city of St. Paul. The final order was authorized by section 241 of the charter which required a 10-day postal-card notice by mail

for the hearing which resulted in such order. This order results from the first meeting. After such order is made other proceedings are required under the charter which result in an assessment. Section 245 requires another similar notice for a hearing upon the assessment and if, upon such hearing, the assessment is satisfactory to the council, it is ratified by a resolution and then passed on to the district court for judicial confirmation and judgment pursuant to section 246. The first required notice was given to appellant and it thereupon acknowledged receipt of the same by a letter to the commissioner of finance advising that it would not pay any part of the assessment, unless compelled to do so because it believed it was not legally liable therefor. In 1917 the city installed the curbing, sewer, water and gas connections required by the final order. Due to the commencement of the World War and inability to obtain materials, no further work was done until May 12, 1921. It was completed on July 5, 1921. On April 3, 1922, the council by resolution approved the assessment and fixed a date for hearing thereon, to-wit: May 1, 1922, at which time the council passed the usual resolution ratifying the assessment and ordering the same to be submitted to the district court for confirmation and judgment as required by the charter. In the proceedings before the district court the appellant interposed its answer and now appeals from an adverse judgment rendered in such proceedings.

The former opinion and the result thereof are now modified in accordance with the view herein expressed.

The postal-card notice of the hearing resulting in the final order was given as required by the charter. It was received. Its legal efficacy is challenged. It, however, met all the literal requirements of the charter. It was in the form provided by the charter. Obviously it brought the actual knowledge of the proceedings to appellant and in that respect it accomplished its purpose. It brought appellant's property within the improvement. It did not conclude appellant upon its claim of exemption. Appellant was never ambitious to prevent the improvement. It merely wanted recognition of its exemption. The notice so given met all the jurisdictional re-

quirements. It invited appellant to come to the hearing. Appellant declined. It had a right to appear and successfully claim that its property, at that time, was not subject to assessment for the improvement and that it in fact was exempt from such assessment. This claim was disputed. The burden was on appellant to show its exemption. True, it could appear in district court in the same proceeding and resist confirmation and judgment under sections 246 and 247. The notice was, under the peculiar circumstances, sufficient to compel action on the part of appellant at some stage of the proceedings to show the exemption, otherwise a valid assessment would result. Respondent too was entitled to have the question, as to whether appellant's property or part of it was subject to assessment, determined when appellant disclosed such claim. It was possible that part of appellant's property might be subject to assessment and part not. The giving of the postal-card notice put the governmental machinery in motion by which it would be eventually determined what part of such property, if any, should be subject to assessment. The fact that the question might otherwise be raised by proceedings to enjoin in equity is not important. Concededly no part of it was, then, subject to such special assessment. But appellant acquired knowledge of the proceedings. When appellant's property lost its exemption from special assessments on December 1, 1920, appellant still had this knowledge.

The resolution of the council on the first day of May, 1922, and the submission of the matter to the district court for confirmation and judgment were equivalent to the filing of the delinquent tax list under the general law for the enforcement of real estate tax, and make a prima facie case showing that the second charter notice provided by section 245 was given. State v. Meck, 161 Minn. 334, 201 N. W. 536. No effort has been made by appellant to overcome this presumption of regularity in the proceedings. When this notice was given, and when a portion of the improvement was made, appellant's property was subject to special assessment. The result is that the city met the charter requirements and the property involved was brought and retained within the improvement. The pro-

ceedings took hold of this property, but, so long as it was exempt, no assessment could be lodged against it. It could not be reached for any such improvement actually made while the exemption continued. When the exemption ceased on December 1, 1920, there was no longer any reason why this property should not meet its just share or proportion, as abutting property, of the burden incident or resulting from that part of the improvement made subsequent to December 1, 1920. The law in force when the assessment is made must control, but it cannot include improvements made to the abutting property during its period of exemption—such property may be assessed only for that portion of the improvement made after the exemption ceased. State v. G. N. Ry. Co. infra, page 22. The cause is remanded with directions to have the amount of the assessment modified so as to be based only on that portion of the improvement made subsequent to December 1, 1920, and when so modified the assessment should be confirmed.

Remanded.

QUINN, J. (dissenting.)

I am unable to concur in the proposition that the postal-card notice brought the property within the improvement in the face of a statute providing that it was exempt from the improvement. I adhere to my former dissent.