CITY OF OWATONNA, Plaintiff-
Respondent,

v.

CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY, Defendant-
Appellant.

No. 1-69 Civ. 53.

United States District Court,
D. Minnesota,
First Division.

March 20, 1970.

George E. Dow, Jr., City Atty., Owatonna, Minn., Best, Flanagan, Lewis, Simonet & Bellows, by Harold C. Evarts, Minneapolis, Minn., for plaintiff.

Stringer, Donnelly & Sharood, by A. James Dickinson and Philip Stringer, St. Paul, Minn., for defendant.

## MEMORANDUM DECISION AND ORDER FOR JUDGMENT

NEVILLE, District Judge.

The mainline of the Chicago, Rock Island and Pacific Railroad runs through the City of Owatonna, Minnesota. For a distance of some 4,700 feet Mosher (formerly Balsam) Avenue parallels and is contiguous to the East side of its right-of-way. In 1967 the City commenced the necessary proceedings looking toward the improvement of Mosher Avenue to convert it from a gravel and dirt road to a paved street with a curb on the West or railroad side and sidewalk but no curb on the East, or residential side. Of the total cost which was slightly in excess of $160,000, $24,252.12 came from the City's general revenue funds, $79,800.00 was received from the State of Minnesota State Aid source[1] and $56,761.60 was assessed to the adjoining land. Of the amount assessed, substantially 60% thereof[2] or $35,392.50 was assessed against the railroad property, $21,369.10 was assessed against privately held residential and unimproved property bordering Mosher Avenue on the easterly side

---

1. The railway called as an adverse witness the Owatonna City Engineer, through whom, the court surmised, it was attempting to establish that funds received from State and/or any other aid sources were actually in excess of $79,800—in fact $137,047.15—and that the total assessment when collected together with the same amount of general revenue funds as now, actually gave the city a "profit" so that it will receive more than its total costs for the Mosher Avenue project. Apparently defense counsel has abandoned this claim for no mention thereof appears in its brief nor was it seriously adverted to in oral argument. Quaere in any event as to the validity of such a contention. Piche v. Village of Shoreview, 279 Minn. 193, 155 N.W.2d 905 (1968).

2. Allocation of 60% of the amount assessed to the railroad does not in itself invalidate the assessment. It is explained first by the City's imposition of the assessment on a front foot basis, which long has been held a valid allocation method in State ex rel. Oliver Iron Mining Co. v. City of Ely et al., 129 Minn. 40, 151 N.W. 545 (1915); Village of Edina v. Joseph, 264 Minn. 84, 119 N.W.2d 809 (1962). Second, there are seven or eight streets which run into and terminate at Mosher Avenue from the east, none, or at the most one of which intersect or cross the railway right-of-way. There is thus more privately owned front footage on the railroad's side of the street. Second, according to Plaintiff's Exhibit 20, the assessment per front foot on the east side for "12 foot slab and a 4 foot sidewalk" was $4.00 and for the west side "12 foot paving slab with curb" was $5.50. There has been no showing in the evidence this is not due to a resultant cost differential. In any event, "mathematical exactness" is not required in spreading an assessment. Village of Edina v. Joseph, *supra*.

of the street. The railroad has taken the necessary steps to contest the assessment, contending that its property is not benefited and that the City acted unreasonably, arbitrarily and capriciously in levying the assessment. Its original protest was made at a hearing before the City Council. For purposes of this case this court sits as though it were a Minnesota district court in Steele County, Minnesota. The question of this court's diversity jurisdiction was put at rest previously. See City of Owatonna v. Chicago, Rock Island & Pacific Ry., 298 F. Supp. 919 (D.Minn.1969).

The troublesome question presented is whether the railroad has received any benefit from the Mosher Avenue improvement so that its property can be assessed for this improvement. Factually it must be conceded that the improvement is of no or at best of very little apparent and present value to the railroad so long as it continues to devote its land to railroad purposes. Clearly it makes no difference to the railroad in terms of revenue whether its line runs through open fields, through towns, past dumps, past beautiful gardens or parallel to a country lane or to a paved road. The railroad does not stop along this stretch and thus the improvement has no depot or siding value. Further there is no evidence that the newly paved road permits industries and shippers to locate along its line who otherwise would not be able so to do so that in this way a benefit may be deemed to be conferred on the railroad. The area is residential and open land on the east, and the Straight River for the most part parallels the railroad's right-of-way on its west. For almost any use to which the property might be put other than railroad purposes there is at least arguably a tangible benefit by the improvement of the road which runs adjacent to it. The argument is made by the City and in previous cases has been sustained, that the pres-

ent use of the land does not prohibit an assessment or necessarily determine benefit to the land. In re Superior Street in Duluth, 172 Minn. 554, 216 N.W. 318 (1927). In re Assessment for Widening East Fourth Street from Sibley St. to Wacouta St. in City of St. Paul, 173 Minn. 67, 216 N.W. 607 (1927). In an effort to thwart this latter argument the railroad has shown that as to a substantial portion of the real property over which its right of way runs the railroad has only an easement; that upon ceasing to use the land for railroad purposes title thereto will revert to the original grantors or their heirs; that if there thus is any benefit when railroad use is abandoned it benefits others and not defendant and therefore its property should not be liable for the assessment.

The above various arguments and contentions carried to their logical conclusion, would result in exempting all property used for railroad purposes as a right of way from any special assessments wherever located and under practically all circumstances. Any railroad running through a town or city would enjoy an immunity for all or substantially all improvement assessments. Such would not in this court's opinion be a just result. The railroads in Minnesota pay no direct or ad valorem real estate taxes due to the concept of a gross earnings tax. They are not however granted an immunity as to liability for special improvement assessments levied by the numerous towns and cities through which they pass, from whose residents and industries they receive their freight business and where they maintain lines, side tracks and depots. Minn.Stat. § 295.02; Minnesota Transfer Ry. Co. v. City of St. Paul, 165 Minn. 8, 205 N.W. 609, 207 N.W. 320 (1926).

The real question brought into sharp focus by this case is whether there is a special benefit to the defendant in a legal sense.[3] The Minnesota Supreme Court

3. The evidence established that for years surface water coming from the east flowed westerly toward the Straight River and had been accommodated by two or more

drains or culverts under the railroad's right of way. The City claims, though the evidence in this regard was not very clear to the court, that in some manner

has recognized the difficulty in attempting to find a specific benefit in cases analogous to this, but nevertheless in all cases but perhaps one that has been called to the court's attention has held the special assessments to be validly imposed on railroad property.

■ In the first instance the imposition of a special assessment is a legislative function, exercised in this case by the Owatonna City Council. Its findings and determinations are presumptively valid not only as to the necessity, desirability and public purpose of the improvement and as to the amount of total cost to be paid by special assessment (here approximately one-third) but also as to the land benefited and the amount thereof and thus the manner in which the assessment should be spread and levied. This determination cannot be reviewed by the courts unless either fraudulent, involving a demonstrable mistake of fact or the application of an illegal principle or erroneous rule of law. The judicial scope of review is therefore very proscribed. Village of Edina v. Joseph, 264 Minn. 84, 119 N.W.2d 809 (1962); In re Reassessment for Grading Prior Avenue, 68 Minn. 242, 71 N.W. 27 (1897); State ex rel. Hughes v. District Court of Ramsey County, 95 Minn. 70, 103 N.W. 744 (1905); State ex rel. Eaton v. District Court of Ramsey County, 95 Minn. 503, 104 N.W. 553 (1905); In re Concord Street Assessment for Paving, 148 Minn. 329, 181 N.W. 859 (1921); Qvale v. Willmar, 223 Minn. 51, 25 N.W.2d 699 (1946); In re Mississippi River Blvd. in St. Paul, 169 Minn. 231, 211 N.W. 9 (1926); Mayer v. City of Shakopee, 114 Minn. 80, 130 N.W. 77 (1911).

It is said only "clear proof of great force" will permit a court to declare an assessment erroneous. McQuillan, Municipal Corporations, §§ 38.183–38.186 and 48 Am.Jur., "Special or Local Assessments", § 29 (1st ed. 1954) pp. 588–589.

■ The ultimate test of a benefit, regardless of the present use of the property, is the increase in the market value of the property assessed. The court reads the Minnesota decisions and those relied upon to hold that the enhancement of the value of land for other purposes may increase its market value even though its present use and its use for the foreseeable future is for railroad purposes. Land in the entire benefit district is increased in value by an improvement such as Mosher Avenue. In re Improvement of Superior Street, Duluth, 172 Minn. 554, 216 N.W. 318 (1927); Wabash Ry. Co. v. City of St. Louis, 64 F.2d 921 (8th Cir. 1933); Board of Park Commissioners of City of Minneapolis v. Bremner, 190 Minn. 534, 253 N.W. 761 (1934). The court has read the cases cited by plaintiff and quotes the following from its brief:

"That there may be a legally recognized special benefit to properties devoted exclusively to railroad use in Minnesota appears from the many reported railroad cases in which special assessments for public improvements have been affirmed in principle. Chicago, Rock Island & Pacific Ry. Co. v. Minneapolis, 164 Minn. 226, 204 N.W. 934, 205 N.W. 640 (1925) (taking and widening a street abutting upon railroad right-of-way); Minnesota Transfer Ry. Co. v. St. Paul, 165 Minn. 8, 205 N.W. 609 (1925) (improvement of an abutting street); State v. Great Northern Railway Co., 165 Minn. 22, 205 N.W. 612 (1925) (same); In re Widening of 28th Street, Minneapolis,

---

the improved Mosher Avenue benefited the railroad in that the grade of the ditch between Mosher Avenue and the right of way was altered so as in some way no longer to permit standing water. No trouble had ever been experienced in this regard and this it seems to the court at best a tenuous benefit. The issue is complicated by the fact that prior to the improvement the City commenced a condemnation proceeding to secure an easement over the easterly 15 feet of the railroad right of way next to Mosher Avenue and in settlement with the railroad paid something in excess of $10,000 therefor. This amount apparently was however in part to compensate for moving certain poles carrying an electric line.

Chicago, Rock Island & Pacific Ry. Co., Appellant, 172 Minn. 454, 216 N.W. 222 (1927) (same); In re Improvement of Superior Street, Duluth, 172 Minn. 554, 216 N.W. 318 (1927), cert. den., 276 U.S. 628 [, 48 S.Ct. 321, 72 L.Ed. 739] (1928) (improvement of abutting street); In re Assessment for Widening East Fourth Street in St. Paul, 173 Minn. 67, 216 N.W. 607 (1927) (street widening at entrance to St. Paul Union Depot Company, owned by participating railroads); and Board of Park Commissioners v. Bremner, 190 Minn. 534, 253 N.W. 761 (1934) (cost of park improvements assessed against railroad right-of-way). Thus, all other considerations aside, the Minnesota courts recognize that railroad rights of way can, and do, receive, in legal contemplation, special benefits from abutting street improvements." Plaintiff's Reply Memorandum pp. 3–4.

The only Minnesota case which appears to be *contra* is In re Appeal of Meyer, 176 Minn. 240, 223 N.W. 135 (1929), perhaps distinguishable because, as is not true in the case at bar, the court found the Hastings City Council had not considered what benefits if any accrued to the assessed property and whether an assessment might be more than the worth of a lot. The railroad in the case at bar appeared before the city council and presented its arguments and views. The *Meyer* court was concerned with a confiscatory assessment, not claimed to be present here. In any event, the *Meyer* case seems to stand alone and expresses a philosophy inconsistent with the later case of Board of Park Commissioners v. Bremner, 190 Minn. 534, 252 N.W. 451 (1934).

■ The railroad called as a witness a real estate and appraisal expert, Stanley F. Miller, who testified that he had made a study of the railroad property along the approximately 4,700 feet bordering Mosher Avenue. He was asked to place a valuation on the property both before and after the improvement. In doing so he testified he made the assumption that the property both before and after was vacant, without tracks, not used for railroad purposes and to be divided into residential building lots and developed accordingly. Another assumption he made was that the 15 foot easement along the easterly side of the property, that is, between the tracks and Mosher Avenue, existed both before and after the improvement. The court sustained an objection to the witness' testimony but permitted him under Rule 43(c) of the Federal Rules of Civil Procedure to continue his testimony in the form of an offer of proof. After completion, the court rejected the proferred testimony. In his offer, the witness gave his opinion that the railroad property before the improvement had a valuation of approximately $13,000 and that after improvement it had a valuation of but $5,000. He arrived at this opinion by the dual method of using market data based on a number of sales which he claimed to be comparable and also by what he styled the developmental approach, calculating the sale price of lots less the cost of platting, selling, overhead, etc. The court's ruling made from the bench was based on the fact that Mr. Miller's second assumption was in error. He testified that if the right of way were divided into building lots the drainage easement would have to be preserved across or under the front yards of houses that might be built on such lots facing easterly onto Mosher Avenue. Since the condemnation by the Village of the 15 foot easement was a prelude to the undertaking of the improvement and would not have occurred or been undertaken nor would the easement now exist were no improvement to have been made, the court felt that Miller's testimony was based on an erroneous premise and therefore not competent evidence. In fact his pre-improvement valuation should have been calculated without the easement. While a transcript of the record is not available, the court has reviewed its notes and is of the opinion that sustaining the objection to the offer of proof was proper for the various reasons below.

In any event and largely for the same reasons, it seems to the court immaterial whether or not the evidence is received, for even were it received in evidence to be considered a part of the record the court does not believe its decision in this matter would change.

*First*, it is noted that the witness did not live in Owatonna, was not familiar in any depth with real estate valuations in Owatonna and, by his own testimony, obtained his information as to comparables through his assistant who apparently made inquiry from local realtors and others who had sold or bought property in Owatonna. It is not necessary to rule on the city's position that evidence of comparables is hearsay and only admitted under specific circumstances in condemnation cases and not as substantive evidence. See State v. Winiecki, 263 Minn. 86, 115 N.W.2d 724 (1962). Mr. Miller's testimony is at best an opinion. Had the case been tried to a jury and the evidence admitted the court would have instructed the jury that it is entitled to give the opinion of an expert "such weight as you may think it deserves." As the trier of the fact, the court is entitled to adopt the same standard and to weigh the expert's evidence accordingly. In order that the presumption of validity of the assessment should disappear, the evidence introduced to rebut it should be convincing and probative. This is not.

*Second*, it appears quite likely to the court that had there been no railroad land involved here at all, but residences existing on both sides of Mosher Avenue when the improvement was made, it is highly probable that either side could obtain a realtor who honestly could testify that immediately after the imposition of the assessment, a particular lot would bring no more on the market than its price just before. The evidence is uncontroverted that prior to the improvement of Mosher Avenue it was in part a dirt road, an unimproved county lane and impassable at certain times of the year. No one can seriously deny that its improvement provides better access to abutting land considering its all weather permanent pavement with curb on one side and sidewalk on the other. It is conceivable that a real estate expert might opine that as of today an abutting lot will sell for no more after than before the improvement; nevertheless, the court would not under the rules above quoted in reviewing the actions of the exercise by the city council of its legislative function on this basis alone set aside the imposition of an assessment. No one can quarrel with the presumption of benefits to the abutting property over the long run by converting a gravel and dirt road to a paved, curbed road in a residential area.

*Third*, the court is informed, and the Owatonna City Engineer referred to such in his testimony, that the City paid the railroad approximately $11,000 to procure the 15 foot slope and drainage easement. Some portion thereof was attributable to "the required raising and/or moving of communication poles," the amount of which was not clearly brought out in the evidence. The expert in arriving at his present valuation of $5,000, made no effort to add thereto the net amount received by virtue of such payment. Were he to have done so the present or after-improvement valuation might well equal or exceed his before-improvement valuation.

*Fourth*, the expert did not state whether the after-improvement valuation of $5,000 assumed prior payment of the assessment of $35,392.50. Plaintiff's Exhibit 19 shows a landowner to be given the privilege to pay the assessment over a period of seven years plus 5½% interest. It seems rather obvious that if one were to pay $5,000 according to the expert's valuation and were to assume the assessment, in effect he thereby establishes a sale price and a valuation of approximately $40,000 as against the $13,000 pre-improvement valuation. If on the other hand the expert assumed that the property owner was to pay the $35,392.50 and then market the property for but $5,000 (based on the expert's comparables) in effect the property owner has lost not only the $8,000 difference

between the expert's before and after valuation but an additional $35,392.50 or a total of approximately $43,000. No such testimony was given nor offered and it seems reasonably clear that if the expert had intended so to opine counsel would not have missed the opportunity to present that fact to the court.

For all of these reasons the court rejects the offer of proof but again opines that even if the court be in error in its rejection, it attaches little weight to the testimony and for the reasons indicated would not change the decision herein reached even were the evidence received.

The court affirms the actions and proceedings of the Owatonna City Council, finds valid and enforceable the assessment in the amount of $35,392.50 against the property of the Chicago, Rock Island and Pacific Railroad and dismisses on the merits the appeal of the defendant Chicago, Rock Island and Pacific Railroad. This memorandum opinion is to comply with Rule 52(a) of the Federal Rules of Civil Procedure.

Let judgment be entered accordingly.

