City of OWATONNA, Plaintiff-Appellee,

v.

CHICAGO, ROCK ISLAND AND PA-
CIFIC RAILROAD COMPANY,
Defendant-Appellant.

No. 20528.

United States Court of Appeals,
Eighth Circuit.

Oct. 22, 1971.

Rehearing Denied Nov. 11, 1971.

A. James Dickinson, Stringer, Donnelly, Allen & Sharood by Philip Stringer, St. Paul, Minn., for defendant-appellant.

Harold C. Evarts, Minneapolis, Minn., George E. Dow, Jr., City Atty., Owatonna, Minn., for plaintiff-appellee; Best, Flanagan, Lewis, Simonet & Bellows, Minneapolis, Minn., Nelson, Casey, Tripp & Dow, Owatonna, Minn., of counsel.

Before MEHAFFY, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from a paving assessment levied by the City of Owatonna (City) against property owned by Chicago, Rock Island and Pacific Railroad Company (Rock Island) in Owatonna, Minnesota. The case was originally filed in state court pursuant to Minn.Stat. § 429.081 and was then removed to federal court by Rock Island. City of Owatonna v. Chicago, Rock Island and Pac. R.R., 298 F.Supp. 919 (D.Minn.1969). After a trial, the district court held the assessment to be valid. City of Owatonna v. Chicago, Rock Island and Pac. R.R., 310 F.Supp. 920 (D.Minn.1970). We reverse with directions to remand the matter to the City for reassessment pursuant to Minn.Stat. § 429.071.

In 1968, the City paved Mosher Avenue from West School Street to Swimming Pool Road. The right-of-way of Rock Island, which is 100 feet in width, lies immediately west of that portion of Mosher Avenue. Rock Island was assessed at $7.50 per front foot for its entire 4,719.0 feet abutting this new paving, or a total of $35,392.50. A curb was installed on the west edge of this paving, and a four-foot sidewalk was installed several feet east of the paving. Property abutting the improvement on the east, which was primarily residential type property, was assessed at $6.00 per front foot, which included the four-foot sidewalk. This discrepancy in assessment is not explained in the record, and this Court is unaware of any logical reason for assessing $1.50 per front foot more for a six-inch curb than for a four-foot sidewalk.[1]

Immediately prior to paving Mosher Avenue, the City acquired a slope and drainage easement along the east 15 feet of all of Rock Island's right-of-way and proceeded to construct a ditch thereon for drainage purposes. Rock Island gave this easement in return for being paid its cost in moving its communication lines and poles from the east edge of its right-of-way to the west side of the drainage ditch. This was done in settlement of a condemnation action brought by the City. Rock Island received no other compensation for the easement.

At the trial, Rock Island offered the testimony of an expert witness, Mr. Miller, who testified that, in his opinion, the value of the right-of-way prior to the improvement was $13,000.00, and the value after the improvement was $5,000.00. This testimony was rejected by the trial court for reasons hereinafter discussed.

The City did not offer any evidence at the trial to prove that the Rock Island's property was benefited, relying instead upon the presumption of validity, which it claims attaches to any assessment made by a city in Minnesota.

---

1. One property owner, whose land abutted the paving on the east, was assessed only $4.00 per front foot since no sidewalk was installed adjacent to his property. It could be argued from plaintiff's Exhibit #20 and the other exhibits admitted into evidence that the City had by inference established a schedule of $2.00 per front foot for grading and graveling, $2.00 per front foot for 12' wide paving, $2.00 per front foot for a 4' wide sidewalk and $3.50 per front foot for a 6" curb.

On appeal, Rock Island argues three points which we shall consider seriatim.

## I.

The first argument made by Rock Island is that the assessment was invalid since there was no evidence that Rock Island's right-of-way was benefited, regardless of its use, as a result of the construction of the paved roadway, and that the trial court applied an erroneous standard of review in determining the validity of the assessment.

It is conceded by the City that the paving did not substantially benefit the Rock Island right-of-way in its present use of the land. However, the law of Minnesota is settled that an assessment may be valid even though there is no benefit to the railroad use of the property, In re Improvement of Superior Street, 172 Minn. 554, 216 N.W. 318 (1927), cert. denied sub nom. Duluth & Iron Range R.R. v. City of Duluth, 276 U.S. 628, 48 S.Ct. 321, 72 L.Ed. 739 (1928), even though the railroad use may be the property's highest and best use. Board of Park Commissioners of City of Minneapolis v. Bremner, 190 Minn. 534, 252 N.W. 451 (1934).

The trial court stated in its opinion that the City's "findings and determinations are presumptively valid not only as to the necessity, desirability and public purpose of the improvement and as to the amount of total cost to be paid by special assessment (here approximately one-third) but also as to the land benefited and the amount thereof and thus the manner in which the assessment should be spread and levied. This determination cannot be reviewed by the courts unless either fraudulent, involving a demonstrable mistake of fact or the application of an illegal principle or erroneous rule of law. The judicial scope of review is therefore very proscribed." City of Owatonna v. Chicago, Rock Island and Pac. R.R., *supra*, 310 F.Supp. at 923.

Since the preparation of the appeal briefs in this case, the Supreme Court of Minnesota has decided the case of Quality Homes, Inc. v. Village of New Brighton, 183 N.W.2d 555, at p. 559 (Minn.1971) and has restated the applicable law in the following words:

"The basis for the levy of special assessments for local improvements is that the property so assessed is 'specially benefited' by the improvement. As stated in State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 47, 151 N.W. 545, 547, the constitution mandates that special assessments 'be uniform upon the same class of property, that they be confined to property specially benefited by the improvement, and that they do not exceed such special benefits.' And, as we further stated in that case, *if a special assessment exceeds the amount of special benefits to the property assessed, the assessment is, as to such excess, a taking of private property for public use without just compensation.* 129 Minn. 45, 151 N.W. 547.

"The general rule is that the courts will be 'slow to disturb' the work of those in legislative and executive positions whose function it is to determine the existence and amount of benefits resulting from a local improvement, In re Improvement of Third Street, St. Paul, 185 Minn. 170, 172, 240 N.W. 355, 356, so that the judgment of the municipality will prevail unless demonstrably wrong. *The basis for judicial review is that stated In re Improvement of Superior Street, Duluth,* 172 Minn. 554, 559, 216 N.W. 318, 320:

'*An assessment regularly made in due process and under express legislative authority is prima facie valid and, in the absence of fraud, mistake, or illegality, is conclusive upon the courts, except that an assessment upon property not specially benefited, or an assessment in excess of the special benefits to the*

*property, would be the taking or confiscating of private property without compensation and would violate the state constitution and the fourteenth amendment to the federal constitution. Therefore, the questions of whether or not the property assessed receives any special benefits, and whether or not the assessment made is greatly in excess of any special benefits received, are questions open for review by the courts.'"* (Emphasis added.)

This determination of the proper basis for judicial review varies materially from the rule set forth by the trial court in that the trial court required that the court find fraud, a demonstrable mistake of fact or the application of an illegal principal or erroneous rule of law before disturbing an assessment, whereas *Quality Homes* places the emphasis upon whether or not the property assessed received any special benefits and whether or not the assessment "is greatly in excess of any special benefits received." It says further that this question is open for review by the courts.

We must therefore examine the record to determine whether the property assessed actually was benefited and whether the assessment made is in fact "greatly in excess of any special benefits received." In doing so we must consider Rock Island's second and third points.

## II.

■ The trial court held that the testimony of Rock Island's expert, Mr. Miller, was inadmissible because of an erroneous assumption by the expert as to the preimprovement value of the right-of-way and for four additional reasons hereinafter discussed. We do not agree that this evidence was inadmissible.

The trial court based its rejection of the evidence in part upon the fact that the expert witness had made the assump-

tion that the 15 foot easement existed along the easterly side of the property both before and after the improvement; whereas, the trial court felt that the proper procedure would have been to calculate the preimprovement valuation without the easement and the postimprovement valuation with the easement in existence.

We cannot see that this is a logical reason to reject the evidence. By adopting the trial court's reasoning that the expert should have used the preimprovement value of the assessed property, unburdened by the easement, we find that the preimprovement value would be greater than it would have been using the assumption that the easement was in existence and that the resulting difference in market value would be favorable to Rock Island rather than to the City. Therefore, we find it difficult to see how this discrepancy could make the entire expert opinion invalid. In addition, the assessment being made is for the grading, gravel, paving and curb, *not* for the drainage ditch. The proper determination to be made is the benefit or lack of it resulting from the improvement that is being assessed. In our opinion, the expert made the proper comparison; but, even if he did not, his assumption was prejudicial only to the railroad.

■ There were four additional reasons given by the trial court for rejecting the evidence. These reasons are set forth at 310 F.Supp. 925. We will not repeat all of them here, but will respond briefly to each of them. First, it is not unusual nor improper to offer evidence as to the value of real estate from an expert from outside the city where the land is located. Mr. Miller was qualified as an expert and acknowledged to be so by the court. He based his opinion on comparable sales, an established method of determining the value of land. While it is true that "Mr. Miller's testimony is at best an opinion" and that the court was entitled to give that opinion such weight as it thought

it deserved, the court may not use his "out-of-town" residence and use of comparable sales provided by an associate as grounds for rejecting the evidence.

Second, it is immaterial that "either side could obtain a realtor who honestly could testify that immediately after the imposition of an assessment, a particular lot would bring no more on the market than its price just before." While "no one can quarrel with the presumption of benefits to the abutting property over the long run by converting a gravel road to a paved curbed road in a residential area," the proper question to be answered here is *whether the assessment for the benefit greatly exceeds the benefit.*

The third additional reason given by the court, that the amount received by Rock Island for the drainage easement was not included in determining the present value of the property, is based upon its determination that Rock Island was paid something for the easement in addition to the cost of moving the communication poles. The record is clear that all Rock Island received was the actual cost of moving these poles. Further, moving the poles from the front (east) of the property back to the west side of the easement would certainly not add to the value of the land as residential property.

Fourth, the trial court's finding that the expert did not state whether the after-improved valuation of $5,000.00 assumed prior payment of the assessment of $35,392.50 is not borne out by the record. Mr. Miller testified as follows:

"Q. You have some additional testimony in support of your opinion? A. Yes. Essentially, that is correct. We did discount the sales more after the construction of the improvement because of the change in topography and the problems that were created, to $460 an acre, which was rounded at $5,000 by the market data comparison approach.

"Again, in the development cost approach, in computing that, because of the fact there was a road in there and that the utilities were changed and one thing and another, it was my opinion that not only could more lots be sold, but that the lots could be sold at a higher price because they were more accessible after the construction, and obviously, there was an improvement in the situation, and in this case we obtained an estimated gross income of lot sales of 48 lots at $2500, or $120,000. Selling expenses are at ten percent, or $12,000; overhead and profit of $24,000. I deducted the City assessments for streets and curbs, $35,400 as one of the items of cost; and the cost of stubbing in existing utilities at $575 each, or $27,600. I estimated the cost of installing a storm sewer to take care of the drainage situation at $80,-000 and that was not only the storm sewer but includes the cost of fill of the ditch over the sewer. I think it is a rather conservative estimate.

"The total estimated expenses to develop the property after the construction of Mosher in this case would amount to about $179,000, which is, in my opinion, more than you could get out of the retail sales, so it is obvious there isn't any indicated value after the construction of the improvements by that particular approach to value.

"Again, I think that just because it shows a loss by that approach doesn't necessarily mean that you couldn't use it for something, but I think the value would be nominal, and I have rounded my final estimate, giving more weight to the market data comparison approach at $5,000 after the construction of the improvements.

"Q. Mr. Miller, to recap then, what is the difference between your opinions of before and after construction? A. Indicates to me that there is a dimunition in value of about $8,000

after the construction of the improvements. Also, it very definitely points out to me that there is absolutely no benefit to the railroad from this construction.

"Q. And is that latter statement true for any and all purposes to which this land could be put? A. Yes.

"Q. One final question, Mr. Miller. Considering the improvements to what is now known as Mosher Avenue, has there been any benefit to this property for any use as a result of those improvements?

"Mr. Evarts: This is repetitious, Your Honor.

The Court: Objection overruled.

The Witness: No."

The testimony of Mr. Miller should have been received as the opinion of a qualified expert subject, of course, to the court giving it such weight as it thought it deserved. Since it was the only evidence adduced at the trial relating to market value before and after the improvement, it was entitled to some consideration.

### III.

■ The third argument of Rock Island is that the cost of gaining access to the improved road in itself negates any special benefit as a result of the new roadway. The evidence on this point is not conclusive either as to the cost of installing a storm sewer to permit filling the ditch, or as to who would pay for such storm sewer. At most, this problem was one of the factors to consider in determining the market value of the property. It is not conclusive in and of itself.

### IV.

■ Looking at the record in this case, we find that (1) the abutting properties were assessed on a "per front foot" basis; (2) the Rock Island's property on the west side of the improvement was assessed $35,392.50; (3) the residential property on the east side of the improvement was assessed $21,369.10; (4) the Rock Island's property is burdened by an easement upon which is located a drainage ditch which presently detracts from its potential use as residential property; (5) the residential property on the east has ready access to the improvement; and (6) the Rock Island property which received little potential benefit from the improvement was assessed more in terms of the total assessment and also per front foot than the property on the east side of the street which received most of the benefits of the improvement. In applying the above findings to the law in this case, we realize we must "be 'slow to disturb' the work of those in legislative and executive positions whose function it is to determine the existence and amount of benefits resulting from a local improvement" and recognize that "the judgment of the municipality will prevail" only if it is not "demonstrably wrong." Quality Homes, Inc. v. Village of New Brighton, *supra*, 183 N.W.2d at 559.[2] However, in this case, the record, as indicated above, fully demonstrates that the judgment of the City is wrong. The evidence is clear that the amount of the assessment against Rock Island is greatly in excess of the benefits derived from the improvement and that the property on the east side of the paved street benefited more and was assessed less than the Rock Island property. We, therefore, reverse the decision of the district court and direct it to enter judgment ordering a reassessment by the City in accordance with Minn.Stat. § 429.071, subdivision 2.

---

2. Since the facts are essentially undisputed and the issues of whether the trial court used an erroneous standard of review and erroneously rejected the expert testimony are basically matters of law, we are not confined by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). United States v. General Motors Corp., 384 U.S. 127, 141–142, n. 16, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); McConnell v. Anderson, No. 20,583, 451 F.2d 193 (8th Cir., 1971).